THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JONATHAN LANGLEY §<br>    Plaintiff §<br> §<br>v. §<br> §<br>INTERNATIONAL BUSINESS MACHINES §<br>CORPORATION §<br>    Defendant § | | CASE NO. 1:18-CV-00443-LY |

**PLAINTIFF JONATHAN LANGLEY'S REPLY IN SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL PRODUCTION**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES, Plaintiff, Jonathan Langley, and files this Reply in Support of Plaintiff's Motion to Compel Production pursuant to Federal Rule of Civil Procedure 34, and would show the Court as follows.

I.
**SUMMARY OF THE ARGUMENT**

IBM does not deny the existence or authenticity of the damming fragments of IBM division plans; it merely refuses to produce the remaining portions nor their equivalents. IBM's objections rely on the fact that the requested discriminatory scheme evidence is located outside of Mr. Langley's small corner of IBM. Such objections willfully ignore the fact that the original source of the discriminatory scheme lies elsewhere. The evidence reveals that at least four divisions share the same discriminatory methodologies and specific terminologies, leading to the logical conclusion that those four divisions received them from a centralized source, IBM Corporate. The evidence shows that at the very least IBM Senior Executive James Kavanaugh is *explicitly* connected to Mr. Langley's division's hiring and firing directives, and it also shows that these directives were not created by division head Crowley nor low level manager Overbay

1

as IBM has represented this Court. The argument that IBM should be allowed to hide the persons that created these discriminatory schemes, which would consequently hide those persons' discriminatory intents behind them, is legally unconscionable.

## II.
## ARGUMENT

1. <u>IBM has never said that the requested, damming documents do not exist; it just refuses to produce them in an attempt to hide the man behind the curtain.</u>

IBM's position has never been that the IBM document fragments, many of which are in Motion to Compel Ex. 3, are fake or that the remaining pages do not exist, nor that other IBM divisions did not include the same discriminatory components at issue in their respective division plans. In fact, IBM addresses this very issue in its confidential filing of the Kevin Kubicki Affidavit.[1]  IBM simply refuses to produce any of them in violation of the requirements of open and honest discovery.

Low level managers like Kim Overbay are not who created schemes designed to correct IBM's "seniority mix," nor are the division heads themselves the creators. These schemes came from IBM Corporate on high, which can be deduced from IBM's untrue representations that it was Kim Overbay who first made the decision to fire Mr. Langley in February 2017, and the suggestion that division head Steve Crowley is the source of his divisions' hiring directives.[2] In reality, Mr. Langley was tipped off that the decision had been made to fire him three months earlier in December 2016, and that division head Steve Cowley was *not* the source of headcount targets; emails show they were instead given to him by someone else above him in IBM Corporate.[3]

---

[1] See Reply Exhibit No. 8
[2] See Reply Exhibit No. 1.
[3] See Reply Exhibit No. 2.

The provenance connecting IBM Corporate to the discriminatory schemes can also be deduced from the different IBM division plan fragments, which include plans from the Software Group, Hybrid Cloud, Analytics, and Digital Business Group. All four divisions wanted to focus on "Early Professionals Hires," which is a very specific, shared term used by all four of the divisions, not to mention a shared focus by all on the same age demographic.[4] Hybrid Cloud (Langley's division) and the Digital Business Group documents both contained an explicit desire to drastically increase the percentage of Early Professional Hires, which is redundantly stated elsewhere in both divisions' documents as correcting the "seniority mix."[5] The Software Group stated the same de facto methodology and goal of sieving out older workers and replacing them with younger ones: "ensuring proper level of voluntary attrition…and focus on early professional hiring."[6] The desire for, and use of the exact term, "attrition," – always in the context of wanting to artificially create attrition to make room for Early Professional Hires – is found in three of four divisions' document fragments.[7] Either (1) four division heads were given mandates from IBM Corporate to correct seniority mix with prescribed methods and terminology/labeling, or (2) four division heads all invented identical age demographic goals, methods, and shared terminology *completely independently from one another*. The former explanation is the most likely; the latter is so suspiciously coincidental as to border on the impossible. There are no other alternative explanations.

IBM is banking on the hopes that Mr. Langley will be unable to prove discriminatory intent as long as it can hide *who* intended the scheme to be discriminatory. How can a plaintiff be expected or prove the intent of a discriminatory scheme's creator when the creator is allowed to

---

[4] See Reply Exhibit No. 3.
[5] See Reply Exhibit No. 4.
[6] See Reply Exhibit No. 2.
[7] See Reply Exhibit No. 5.

remain hidden behind the curtain? IBM possesses the requested documents containing that information or at the very least information reasonably calculated to lead to it; IBM simply refuses to produce any of it. Mr. Langley consequently requests this Court's assistance in compelling IBM to participate in the open and honest discovery required of it.

2.      <u>Mr. Langley stands by his certificate of conference.</u>

Mr. Langley's counsel exchanged letters, emails, and phone calls with IBM's counsel, the latter of whom made it *abundantly* clear that IBM would never produce the at-issue documents because they were outside of Mr. Langley's small subdivision. Insisting upon additional discussions with a brick wall who has already said it will never move is disingenuous and merely an attempt to defeat this motion outside the merits.

3.      <u>The evidence shows the connection between the discriminatory scheme and IBM's executives.</u>

IBM formally responded to Request for Production No. 26 by saying that James "Jim" Kavanaugh, Senior Vice President and Chief Financial Officer, is a senior executive "not involved in the distribution of headcount reduction targets" or involved with the resource actions within Hybrid Cloud.[8] Yet, the Hybrid Cloud plan slide has a placeholder stating, "Awaiting headcount dynamics and financials from Jim."[9] Based on information and belief, the referenced Jim is James "Jim" Kavanaugh, which both casts doubt on IBM's credibility and corroborates Mr. Langley's case theory that these discriminatory schemes were created and handed down by IBM Senior Executives. It also dovetails perfectly with the other aforementioned evidence of the scheme's provenance from IBM Corporate, namely the suspiciously mirrored methodologies and

---

[8] See Reply Exhibit No. 6.
[9] See Reply Exhibit No. 7.

terminology shared between supposedly independent divisions.[10] The notion that IBM should be able to hide IBM Corporate emails containing those suspiciously shared, hyper specific terms like "seniority mix" to confirm the discriminatory scheme's provenance is unconscionable.

4. <u>Other courts have already dismissed IBM's argument regarding narrowly tailored requests for executive emails.</u>

In an analogous case filed by a former IBM employee in California, IBM made virtually identical arguments regarding the overbreadth of requested search terms such as "seniority mix." The Central District of California Federal District Court rejected these arguments and ruled:

> The Court agrees with plaintiff that documents relating to IBM's underlying reasons that may have led to the 2016 nationwide EBU resource action that affected plaintiff and others are relevant to plaintiff's claim of age discrimination. The fact that a specific manager identified plaintiff for layoff does not render irrelevant information, if any exists, that the company may have given direction to its managers as to the criteria -- including the "seniority mix" -- that those managers might consider in making that decision, whether as to this specific employment action or such actions in general.
> *See* Motion to Compel Exhibit No. 5, pgs. 8-9.

Having only requested emails from just a handful of the most likely custodians and actors, and only emails with relevant, hyper specific search terms, Mr. Langley's requests should likewise be found permissible by this Court.

5. <u>IBM's argument regarding the motion's specificity lacks merit.</u>

IBM's contention that Mr. Langley's Motion to Compel lacks specificity fails. Mr. Langley calculated and documented the repetitive use of unmeritorious objections by IBM, the use of which collectively amounts to waiver *en masse*. See *Hopkins v. Green Dot Corp.,* No. SA-16-CA-00365-DAE, 2016 WL 8673861, at *7 (W.D. Tex. Aug. 16, 2016)( "[c]ourts consistently find waiver of a valid objection upon a party's use of boilerplate [objections]"). Boilerplate notwithstanding, the unifying theme of IBM's objections is that IBM believes it can shield

---

[10] *See generally* Reply Exhibit Nos. 3-6.

anything outside of Mr. Langley's subdivision as being allegedly irrelevant, outside of the scope of discovery, and overbroad. Mr. Langley spent entire sections – backed with evidence and case law – demonstrating why the requested evidence from outside of his subdivision is relevant, narrowly tailored, proportionate, within the scope of discovery, and not unduly burdensome. To suggest otherwise is another attempt to defeat this motion outside the merits.

### III.
### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that IBM be ordered to withdraw all of its objections to Plaintiff's Requests for Production Nos. 18-48, other than that of privilege, and to compel IBM to provide meaningful and complete production in response to each such request, and for such other and further relief, whether legal or equitable, general or special, to which Plaintiff may be entitled.

Respectfully submitted,

_____
Heidi A. Coughlin
State Bar No. 24059615
Archie Carl Pierce
State Bar No. 15991500
Blair J. Leake
State Bar No. 24081630
WRIGHT & GREENHILL, P.C.
900 Congress Avenue, Suite 500
Austin, Texas 78701
512/476-4600
512/476-5382 (Fax)
HCoughlin@w-g.com
CPierce@w-g.com
BLeake@w-g.com

Charles A. Lamberton*
Lamberton Law Firm, LLC
Pa. Bar I.D. No. 78043
707 Grant Street
1705 Gulf Tower
Pittsburgh, PA 15219
412-258-2250
cal@lambertonlaw.com
**Admitted Pro Hac Vice*

***ATTORNEYS FOR PLAINTIFF
JONATHAN LANGLEY***

## CERTIFICATE OF SERVICE

I hereby certify that on 8th day of January, 2019, I electronically filed the foregoing Reply in Support of Plaintiff's Motion to Compel with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the Court and Defendant's counsel.

_____
Heidi A. Coughlin