**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JONATHAN LANGLEY** | § | |
| | § | |
| **VS.** | § | **NO. A-18-CV-443-LY** |
| | § | |
| **INTERNATIONAL BUSINESS** | § | |
| **MACHINES CORPORATION** | § | |

## <u>ORDER</u>

Before the Court are Plaintiff's Motion to Compel Discovery (Dkt. No. 21) and all related responses and replies. The Court held a hearing on the Motion on January 17, 2019.

This is an age discrimination case. Plaintiff Jonathan Langley is 60 years old and began his employment with IBM in 1993. At the time of his termination, he was employed in IBM's Hybrid Cloud group. Langley alleges that IBM terminated him because of his age in violation of the ADEA, 29 U.S.C. § 623(a)(1). He asserts he was laid off due to IBM's corporate plans to attract young workers and lay off older workers. IBM answers that Langley was terminated as part of a reduction in force, and the criteria used to select those laid off were age-neutral. Langley disagrees, and claims the criteria IBM used to screen out workers were applied in a discriminatory fashion to lay off older workers in disproportionate numbers.

Langley served 48 requests for documents on IBM, intended to discover evidence of the corporate plan he contends IBM adopted. IBM has objected to most of these requests for production, and has limited its responses to documents directly related to his small business unit at IBM (which only included five individuals). IBM contends that many of the document requests relate to other business units, and completely different divisions of IBM, and are thus irrelevant to whether IBM discriminated against Langley when it laid him off. Its argument is that

> [t]his is a single-plaintiff termination case. It involves an individual who worked in a particular role and business unit within IBM, and IBM terminated him in 2017 as part of a specific resource action (IBM's term for a reduction in force). The matters

relevant to Langley's claims (and IBM's defenses) are his employment, his selection for inclusion in the resource action at issue, and his termination. IBM has produced to Langley voluminous documents related to his work history, job performance, compensation, resource action, selection for layoff, job group comparators, and attempts to find alternate employment within IBM. Further, the Company has produced corporate policies, procedures, and guidance that were applicable to Langley, as well as training materials and other documents related to the resource action that impacted Langley.

Dkt. No. 29 at 1-2. In addition to the objection that the requested documents are not relevant and would be burdensome to produce, IBM also argues that the motion to compel is insufficiently specific, and fails to identify with any particularity the requests it contends are at issue. Langley responds that the 48 requests were in fact specifically tailored to seek information directly relevant to IBM's nationwide plan to seek a "talent refresh" and to lay off older employees to make room for young, "Millennial" hires. He points to slides from presentations apparently made to high level decision makers to support this argument. As for the specificity of his motion, Langley argues that IBM has categorically refused to produce records outside of the small unit Langley was a part of, and his motion was filed to address this fundamental issue first, and the parties should be able to resolve more detailed disputes after the Court resolves the more global dispute he has raised.

After hearing argument from the parties, the Court stated that it agreed it would be more efficient for the Court to address only the dispute underlying all, or nearly all, of the objections raised by IBM—is discovery outside of Langley's business unit appropriate, and if so, how far beyond the business unit?—and then for the parties to confer on any resulting disputes before the Court takes up those issues. On the merits of the more "global" question, as stated at the hearing, the Court believes IBM's position that discovery should be limited to only Langley's small business unit is inappropriate. In deciding this issue, the Court has reviewed the four discovery orders entered by Magistrate Judge Abrams in a case raising very similar issues, *Iacono v. IBM Corp.*, No. CV 17-8083-FMO (C.D. Cal.), and will follow the general approach that Judge Abrams has followed in that

2

case. Specifically, in general, the Court believes that discovery at the level of the national group of which Langley's unit was a part is appropriate. The Court's understanding of IBM's structure is rudimentary at this stage of the case, and is based primarily on the information provided by IBM's counsel at the hearing. He explained that, generally speaking, the IBM hierarchy starts at the highest level with a "group," then goes to a "unit," then an "organization," and, though counsel did not mention this, obviously continues to sub-categories below that, given that Langley was part of only a five person "team."

As pertinent to this case, the relevant group would appear to be the "Hybrid Cloud Group," and the relevant organization below that is the "Cloud Sales Worldwide Top" organization. It is not clear what the entities below that are, but IBM's counsel noted at the hearing that Langley was a member of the Pure Application Sales Team, which he described as a four person team. In the *Iacono* case, Judge Abrams allowed discovery from the Enterprise Business Unit, which he described in his orders as one of seven sub-units of IBM's Sales and Distribution Business Unit. He refers to the EBU as a "national" sales unit. In this case, IBM took the position at the hearing that discovery should be limited to the Cloud Sales Worldwide Top organization. It also argued that the California court's approach to limit discovery to the EBU was the right approach, and an analogous limit should be imposed here.

The Court notes that IBM stated that its hierarchy is "group" → "unit" → "organization." The scope of discovery allowed in *Iacono* was of a "unit"—the Enterprise Business Unit—and it was not limited to an "organization," the next tier below a unit. "Cloud Sales Worldwide Top" is an "organization." According to what was presented at the hearing, it would appear that the relevant entity here that is roughly equivalent to the EBU in the *Iacono* case is the Hybrid Cloud Group, the level above the Cloud Sales Worldwide Top "organization." At least one of the documents Langley submitted with his motion supports this conclusion. In an IBM presentation slide—which identifies

a desire to "Shift headcount mix towards greater % of Early Professional hires"—the head of the Cloud Sales Worldwide Top organization, Steve Cowley, is listed on a chart as one of the "leaders" of programs addressed in the presentation.  Dkt. No. 21-3 at 8.  This suggests that discovery at the level of the Hybrid Cloud Group is reasonably likely to lead to the discovery of admissible evidence.  Accordingly, the Court will direct IBM to produce documents from within that group responsive to Langley's requests for production.  Further, again mirroring Judge Abrams' orders, at this time the Court will limit discovery to the "resource action" of which Langley's termination was a part.

An important caveat to all of this.  The fact that IBM has chopped itself into bits and pieces for organizational purposes does not mean that discovery must remain similarly organized.  The scope of discovery set by Rule 26 is not constrained by artificial borders created within a corporation.  What matters is not whether any responsive document comes from the records of any particular division but whether it is relevant to a claim or defense in the case, and whether the discovery is proportionate to the needs of the case.  Thus, while the Court is using IBM's structure at this point as a rough proxy for what it views to be an appropriate limit on IBM's search for responsive documents, the parties should not take this as an absolute prohibition on requesting discovery of items that might be outside of the Hybrid Cloud Group.  As discovery progresses, information may be learned that justifies going outside the organization for targeted inquiries.  The recent order in *Iacono* requiring IBM to produce Stephen Leonard, IBM's General Manager-North America, for deposition, is an example of just such a situation.

Accordingly, Plaintiff's Motion to Compel Discovery (Dkt. No. 21) is **DENIED** without prejudice to the Plaintiff re-urging any portion of these issues, and IBM is **ORDERED** to supplement its discovery consistent with this order.  Thereafter, if disputes remain, the parties shall meet and confer on any such issues before any renewed motion to compel is filed.

SIGNED this 30th day of January, 2019.


_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE