THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JONATHAN LANGLEY | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | CASE NO. 1:18-CV-00443-LY |
| | § | |
| INTERNATIONAL BUSINESS MACHINES | § | |
| CORPORATION | § | |
|     Defendant | § | |

**PLAINTIFF'S RESPONSE TO IBM'S MOTION TO
COMPEL DEPOSITION TESTIMONY AND MOTION FOR SANCTIONS**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Plaintiff, Jonathan Langley, and submits this Response in Opposition to International Business Machines Corporation's ("IBM") Motion to Compel Deposition Testimony and for Sanctions (Docket No. 59).

I.
**BACKGROUND AND SUMMARY OF PLAINTIFF'S POSITION**

IBM has filed a motion to compel the identity of any individual employed by IBM who provided Langley documents after he was terminated that clearly show that IBM engaged in illegal discrimination against older workers. These documents consist of mere excerpts and screenshots of PowerPoint presentations for Spring and Fall Plan documents presented to IBM executives for each IBM Group. Langley requested IBM produce the entirety of these documents through discovery so he could ask questions about the documents from the people who generated, received, and acted upon them, but to date IBM has refused. Those are the persons who need to be identified and questioned, not the irrelevant individuals who merely couriered excerpts of the documents to Langley.

1

IBM's motion is totally without merit for the following reasons:

1. IBM claims it must know the identity of the document courier to prepare its defense. This is simply not true. IBM has full access to any and all information regarding these documents because these are *their* documents. If IBM wants to know what a word therein means, the dates the documents were created, or whether they were drafts or final versions, all of that information is already within its possession and control.

2. Under Fifth Circuit precedent, the documents couriers' identity is "utterly irrelevant" to any claim or defense in this case because there is no legitimate reason IBM needs the identity of the document provider(s). IBM simply wishes to obtain this information to take retaliatory actions against the document provider(s) who are still employed at IBM. At the very least, the disclosure of these persons' identities would have a "chilling effect" on any future disclosures of documents showing illegal behavior, an obvious benefit to IBM in defending discrimination lawsuits pending across the nation, and an ongoing EEOC investigation into its conduct.

3. These individuals qualify as informants under the "informant privilege" because Langley was a conduit for providing these incriminating documents to the EEOC to aid the government with its active investigation of IBM's illegal conduct.

4. IBM claims Langley relies on information from the document provider(s) to establish his case. This representation in Ms. Marshall's affidavit is simply inaccurate. The deposition transcript speaks for itself.[1] Langley's deposition is devoid of instances where Langley relies on the document provider(s)' statements or interpretations. Much to the contrary, when counsel for IBM asked Langley questions regarding terms in a document, Langley

---

[1] *See generally* Ex. 4.

provided his own understanding of the term and the basis of that understanding.[2] Throughout the entire six plus hour deposition there was only one-instance Langley referenced the document provider's input, which was after a series of five questions about his understanding of the documents. In response to the fifth question, Langley was asked whether anyone had confirmed his understanding of the information, and Langley responded that someone had, but refused to disclose that person's identity under the informant privilege.[3]

5. To the extent IBM claims that not knowing the document provider's identity impeded its ability to ask deposition questions, the transcript shows otherwise. Langley's attorney specifically told IBM's counsel she could ask him questions about the documents, what the documents mean, and the basis of his understanding of the documents.[4]

6. Lastly, IBM effort to compel the identity of the document courier is a tactic IBM has unsuccessfully employed in past employment litigation. It is just another example of their tactic to further delay and avoid meaningful discovery as well as to increase the litigation costs for Langley.

II.
**EXHIBITS**

- **Exhibit No. 1** -Plaintiff Lomax's Motion for Protective Order, requesting protection from IBM's discovery questions attempting to demand identities of confidential informants.
- **Exhibit No. 2** -Plaintiff Lomax's Memorandum of Law in Opposition To Defendants Motion to Compel Answers to Their First Set of Interrogatories and in Support of Plaintiffs' Motion for a Protective Order Concerning Confidential Witnesses.
- **Exhibit No. 3** -Southern District of New York Order Denying IBM Motion to Compel.
- **Exhibit No. 4** -Deposition Transcript of Jonathan Langley.
- **Exhibit No. 5** -Transmission of IBM planning documents to the EEOC.

---

[2] *Id.* at 136.
[3] *Id.* at 249.
[4] *Id.* at 153-154 and 249.

III.
## ARGUMENTS AND AUTHORITIES

A. <u>The identity of informant(s) who gave Langley and the EEOC these IBM planning documents are utterly irrelevant and will serve no purpose other than facilitating retaliation by IBM against the informants.</u>

The specific identity of a person who took screenshots of IBM's planning documents and then provided them to Langley, and in turn to the EEOC, is utterly irrelevant to this case. IBM can access any and all information needed for its defense related to these documents already, because these are *IBM documents created by IBM employees*.  If IBM wants to discover what is meant by a directive to change the Early Professional Hire seniority mix ratios within Hybrid Cloud, IBM already knows which IBM employee wrote the directive in question and can ask that person. If IBM wants to know whether the Hybrid Cloud document fragment was a rough or final draft, IBM has access to who wrote the various versions of the document and can compare the drafts and final versions, all of which are in its possession.[5] If IBM wants to know whether or not an executive specifically targeted Langley's five-person team for layoffs because his team was comprised exclusively of older workers and would help lower the age demographics of Hybrid Cloud, IBM can ask the employee that chose Langley's team for layoffs. There is no material information not already known or possessed by IBM. The identity of a confidential informant is utterly irrelevant and immaterial to claims or defenses in this case. IBM merely wants to obtain the informant's identity for the purpose of retaliating against employees who would dare expose IBM's illegal acts to the public. IBM's retaliatory purpose is one of harassment and abuse. Neither harassment nor abuse are proper purposes of discovery under the

---

[5] Which, notably, have still never been produced to Langley despite this Court's Order from two weeks ago setting the approximate scope of discovery as encompassing Hybrid Cloud, and despite IBM's demand to be able to ask questions in discovery about the same high level planning documents in this motion.

law, and allowing such a purpose to compel discovery here would set a dangerous, chilling precedent deterring citizens from exposing bad actors in the future.[6]

To date, IBM has refused to produce the remaining portions of the high-level planning documents at issue–whether from Hybrid Cloud or another division. This seriously calls into question the validity of IBM's demand to disclose the identity of the document provider since IBM simultaneously is taking the position the very same documents are outside of the scope of discovery.[7] Langley and his attorney expressed a willingness to disclose everything he knows or believes about the documents, including what an informant said about them, only refusing to disclose information that would reveal the informant's identity.[8] The actual identity of the document courier is utterly irrelevant and is not reasonably calculated to lead to admissible or even discoverable evidence. An examination of IBM's stated reasons for wanting the IBM informant's identity fails to withstand even basic scrutiny as it relates to potentially finding evidence that could ever be used to prove or defend an ADEA case:

1. **"The identity of individuals that he placed at issue is highly relevant to the Company's defense."**[9] - This is a broad, conclusory claim with no explicit meaning. Persons whose identities would be relevant here related to the meaning and significance of the planning documents include (1) the IBM employees who created the company policies contained therein, the identities of whom IBM already knows; and (2) the IBM employees who were expected to act on the headcounts targets contained therein, the identities of whom IBM already knows.

2. **"Knowledge of this information will facilitate a full and complete examination of Langley"**[10] – This is also a broad, conclusory claim with no explicit meaning. Langley will not be allowed to offer evidence of anything other persons told him, as that would clearly be inadmissible hearsay, nor could Langley call such persons as a witness if he

---

[6] *See* Fed.R.Civ.P. 30(d); *see also Ilson v. Marin County Hosp. Dist.,* 149 F.R.D. 553, 555 (W.D. Tex. 1993).
[7] *See* Defendant IBM's Motion for Clarification of January 30, 2019 Order (arguing that the scope of discovery should be limited to Cloud Worldwide Sales, which would necessarily carve out *all* of the high-level planning documents at issue in this motion from being discoverable, as such documents are all from divisions above Cloud Worldwide Sales and would thus be outside of IBM's suggested scope of discovery).
[8] Ex. 4, pg. 151-154.
[9] Defendant International Business Machines Corporation's Motion to Compel Deposition Testimony and for Sanctions, pg. 3.
[10] *Id* at 3.

seeks to protect them under the informant privilege. The only evidence about these documents that could be admissible to show the meaning would be the documents themselves, the testimony of those who created the documents and the policies within them, persons who were expected to carry out those policies, and properly qualified experts. IBM already has access to this information.

3. **"It will permit the Company to seek discovery straight from the individual(s) who allegedly provided Langley with the information that he claims is at the heart of this case."**[11] – IBM is welcome to seek discovery from any of its employees, and it knows who would possesses information relevant to this case, including who created the discriminatory policies and who carried them out. As evidenced in his deposition, Langley's case does not rely on any information obtained from the document provider, other than the documents. Therefore the identity of this person would not reveal any discoverable information.

4. **"IBM wants to explore with these individuals whether they made the statements that Langley attributes to them, and whether they have personal knowledge of the matters to which they allegedly spoke."**[12] – Langley does not attribute any statement to a document provider and his deposition is devoid of any reliance on statements from the provider(s). Further, Langley would never be able to offer statements or opinions of anonymous informants at trial, both for reasons that their outsider opinions are not relevant and because of his decision to protect their identities.

5. **"IBM wants to explore Langley's document's with these individuals, addressing (among other things) who authored them, whether they were mere drafts, who reviewed them, and whether they have anything at all to do with Langley's separation."**[13] – These are IBM's *own documents*. IBM has the ability to effortlessly manage and access zettabytes of data by its own admission.[14] IBM already knows who authored them, can easily compare them to the final planning documents to determine if they are drafts or final versions, and knows who was present when the PowerPoint presentations at issue were presented to its executives. Knowing who specifically gave those document fragments to Langley and the EEOC is not going to change what IBM discovers about whether the documents are drafts or final versions, the creators' intents behind the policies in the documents, the actions of managers acting on those policies, or whether those actions affected Langley, and are thus utterly irrelevant to this case.

6. **"IBM wants to explore whether the individuals have other information that undercuts Langley's claims, such as knowledge that Langley made admissions against interest."**[15] -- At best, this is a fishing expedition. When weighed against the obvious retaliatory purpose, it falls far short. IBM possesses no information to suggest that Langley potentially made statements against interest, nor has it even suggested what

---

[11] *Id* at 3.
[12] *Id* at 3.
[13] *Id* at 3.
[14] https://www.ibm.com/analytics/hadoop/big-data-analytics
[15] Defendant International Business Machines Corporation's Motion to Compel Deposition Testimony and for Sanctions, pg. 3.

6

such a statement might look like in an ADEA case in this context. The level of mental gymnastics required to think of what IBM might find if they get access to informant(s)' identity proves why demanding they be disclosed is a fishing expedition rather than a relevant discovery request proportionate to the needs of the case.

7. **"IBM is entitled to discovery of any 'non-privileged matter that is relevant to any party's claim or defense."**[16] The identities of the informants of this case have no reasonably plausible bearing or relevance to the claims or defenses in an ADEA case. Their identities would not be admissible at trial, nor would their statements or opinions.

8. **"The Company is permitted…to explore whether these individuals actually made the statements that Langley would attribute to them."**[17] Langley *never* said that his opinions are based on what informants told him, as shown by the attached deposition transcript.[18] His opinions are based on what the documents say on their face and his experience at IBM.[19] Moreover, Langley could not offer evidence at trial of what informants said to him even if he wanted to because it would constitute inadmissible hearsay.

IBM has offered no proof of the relevance of confidential informant identities to this case outside of (1) a vague, nondescript hope of finding grounds to impeach hypothetical testimony that would never be admissible at trial in the first place, rendering the hunted-for grounds for impeachment of inadmissible testimony necessarily useless and irrelevant; and (2) allegedly verifying facts about its own planning documents. Again, these are *IBM's own documents.* The identity of an informant(s) who gave documents to Langley and the EEOC is utterly irrelevant to the claims and defenses in this case, and public policy would suggest this Court should not set a precedent allowing companies to obtain the identities of justice-minded confidential informants that reveal illegal conduct.

---

[16] *Id* at 4.
[17] *Id* at 7.
[18] *See generally* Ex. 4.
[19] Defendant International Business Machines Corporation's Motion to Compel Deposition Testimony and for Sanctions, pg. 7.

B. <u>Fifth Circuit precedent has used the informants' privilege and a corresponding lack of relevance to prevent disclosure of confidential informants' identities.</u>

In *Wirtz,* the famed Fifth Circuit Chief Justice Elbert Tuttle held that the identities of persons who had filed employment law complaints against their employers for violating the Fair Labor Standards Act did not have to be disclosed because they were protected by the informants' privilege as well as the sheer irrelevance of their identities in discovery.[20] Extending the privilege from criminal law to civil litigation, Chief Justice Tuttle wrote that the informants' privilege "may be invoked where a balancing of conflicting policy considerations shows that the public interest in protecting the flow of information outweighs the individual's right to prepare his defense," and that "if this type of weighing of conveniences is warranted in an action where the defendant may be subjected to criminal penalties, it goes without saying that it is appropriate where only civil remedies are sought."[21] The Court went on to hold that such a balancing test was not even necessary under that case's facts, however, because:

> "it is perfectly plain that ***the names of informers are utterly irrelevant to the issues to be tried by the trial court***. The question is whether, with respect to certain employees, the Act's requirements as to payment of hourly wages were violated. What possible difference does it make who reported to the Secretary that violations had occurred? It is entirely possible that the Secretary's entire case could be proved by the use of single witness, such as a bookkeeper or a supervisor. However, it may be that ten or twelve employees may have reported or informed as to alleged violations. In such circumstances the only conceivable need for the names of the informers would be the desire of the employer to know who had informed on it. This is not a relevant issue to the cause before the trial court."[22]

If Chief Justice Tuttle's balancing test proves necessary here, there is no question that the interests of henceforth protecting the flow of information about employers' malfeasance outweighs any possible benefit IBM would obtain by uselessly learning the identity of the

---

[20] *Wirtz v. Continental Finance & Loan Co. of West End*, 326 F.2d 561 (5th Cir.1964).
[21] *Id* at 563.
[22] *Id* (emphasis added).

confidential informants. As in *Wirtz,* though, the specific *identities* of the persons who confidentially informed on IBM, by simply providing incriminating documents to Langley and the EEOC, are likewise "utterly irrelevant to the issues to be tried by the trial court," and such lack of relevance has already been demonstrated in this response.[23] The question to be decided by this trial Court is whether IBM created a discriminatory employment scheme that caused Langley to lose his job on the basis of his age. The evidence that will be offered to prove or disprove that allegation will be the documents themselves and the testimony of the IBM employees who created and carried out those directives, not the persons who felt morally compelled to confidentially expose the illegal nature of IBM's directives. If those persons prove to be one in the same, which is wholly unlikely, IBM already has access to those persons and has every right to question them about the relevant issues in this case and to use their testimony accordingly. There is no legal reason wherein IBM would need to know that such persons were the source of the disclosure of IBM documents to Langley and the EEOC, leaving retaliation as the only plausible motive of IBM. Chief Justice Tuttle noted that, "the most effective protection from retaliation is the anonymity of the informer…[and] the purpose of allowing the informers privilege in such a case…is to make retaliation impossible."[24] Here, as well, the only way this Court can ensure that IBM will not retaliate against its employees and consequently deter other justice-minded persons from coming forward, when an illegal act is encountered in the future, is to decline to grant IBM's motion to compel their identities from Langley.

Accordingly, and in the alternative, Langley hereby moves that this Court grant him a protective order, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, to protect the identities of the confidential informant(s) described in this response and accompanying proposed

---

[23] *Id.*
[24] *Id* at 564.

Protective Order, and granting such other and further relief as the Court deems just. Langley is willing to provide additional briefing on this matter to whatever extent requested by this Court.

    C.  <u>IBM cannot use private litigation to make an "end run" around the EEOC.</u>

Before filing suit, Langley provided the IBM documents at issue to the EEOC.[25] The EEOC had consolidated all of the individual complaints about IBM, transferred all matters to New York and was undertaking a large-scale investigation into IBM's discriminatory practices.[26] Courts have long recognized that when a private citizen reveals discriminatory employment practices, "the private litigant not only redresses his own injury but also vindicates the important congressional policy against discriminatory employment practices."[27] IBM's motion to compel should accordingly be denied to prevent IBM from performing an improper end run around the EEOC's ability to effectively shield its confidential informants by compelling such disclosures during private litigation wherein the EEOC is not a party.

    D.  <u>This is not the first time IBM has filed a motion to compel a plaintiff to disclose the identity of a confidential informant, nor would it be the first time a court denied its demand to do so.</u>

IBM's motion to compel is another iteration of its playbook exhibited in *Iacano* and here, which has consisted of pretrial conduct that unnecessarily drives up legal costs by creating discovery battles to prevent parties from timely getting to the merits of the case.[28] IBM's motion to compel herein is not the first time IBM demanded a court compel disclosure of the identities of IBM employees who served as confidential informants about the company's illegal practices. In *In re International Business Machines Corp.*, IBM was faced with a class action lawsuit

---

[25] *See generally* Ex. 5, which is dated April 13, 2018. Plaintiff did not file his Original Complaint until May 25, 2018.
[26] Federal Watchdog Launches Investigation of Age Bias at IBM, May 17, 2018 available at https://www.propublica.org/article/federal-watchdog-launches-investigation-of-age-bias-at-ibm.
[27] *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 45 (1974).
[28] 28 U.S.C.A. § 1927 empowers this Court to assess costs and attorneys fees against litigants who "so multiplies the proceedings in any case unreasonably and vexatiously."

wherein class certification was supported by affidavits from anonymous IBM employees.[29] IBM filed a motion to dismiss, which was denied, and during the hearing on the motion counsel for IBM demanded, "I want all of his confidential witnesses for deposition as soon as he can produce them. I'll take them tomorrow."[30] IBM then served interrogatories on Plaintiffs' counsel demanding the informants' identities and filed a motion to compel, like here, because Plaintiffs refused to disclose their identities.[31] The Plaintiffs in that case submitted detailed briefing about why the informants' privilege and basic questions of relevance support shielding their identities, all of which is incorporated herein by reference in support of Langley's arguments Within there is referenced supporting case law from numerous circuit courts, including the Fifth Circuit, which all recognized that compelling disclosure of informants "could deter informants from providing critical information to investigators in meritorious cases or invite retaliation against them."[32] The Court ultimately denied IBM's Motion to Compel disclosure of the identities of the confidential informants in that case.[33] Langley asks that this Court do the same.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that the Court deny IBM's Motion to Compel Deposition Testimony and for Sanctions.

---

[29] Ex. No. 1, p. 1-7.
[30] Ex. 2, p. 2.
[31] Ex. 2, p. 1-7.
[32] Ex. 2, p. 9.
[33] Ex. 3, p. 1.

Respectfully submitted,

_____
Heidi A. Coughlin
State Bar No. 24059615
Archie Carl Pierce
State Bar No. 15991500
Blair J. Leake
State Bar No. 24081630
WRIGHT & GREENHILL, P.C.
900 Congress Avenue, Suite 500
Austin, Texas 78701
512/476-4600
512/476-5382 (Fax)
HCoughlin@w-g.com
CPierce@w-g.com
BLeake@w-g.com

Charles A. Lamberton*
Lamberton Law Firm, LLC
Pa. Bar I.D. No. 78043
707 Grant Street
1705 Gulf Tower
Pittsburgh, PA 15219
412-258-2250
cal@lambertonlaw.com
*Admitted Pro Hac Vice

*Attorneys for Plaintiff
Jonathan Langley*

## PROTECTIVE ORDER CERTIFICATION

Pursuant to Rule 26(c), Plaintiff's counsel certifies that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.

_____
Heidi A. Coughlin

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2019, I electronically filed the foregoing Response In Opposition with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the Court and Defendant's counsel.

_____
Heidi A. Coughlin