IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JONATHAN LANGLEY | § |
| | § |
| VS. | §    NO. A-18-CV-443-LY |
| | § |
| INTERNATIONAL BUSINESS | § |
| MACHINES CORPORATION | § |

## ORDER

Before the Court are IBM's Motion to Compel Deposition Testimony and for Sanctions (Dkt. No. 59); Langley's Response (Dkt. No. 67); and IBM's Reply (Dkt. No. 73).

## I. Background

This is an age discrimination case. Jonathan Langley, a longtime IBM employee, alleges that IBM's termination of him as part of a reduction in force violated the ADEA. He asserts that the reduction in force was intended to make room for younger workers, as IBM was attempting to "reset" its workforce to have a better representation of millennials. To support his discrimination claims, Langley relies in part on documents he has testified he was given by either current or former IBM employees. The documents include "slides from presentations made to high level decision makers," as well as planning documents from various IBM business groups and units. Dkt. No. 59 at 2. At his deposition, IBM asked Langley to identify the individuals who gave him the documents. Langley's attorney instructed him not to respond, citing an "informant's privilege." Langley complied with his attorney's instruction, and IBM's counsel reserved time to question Langley on the matter following a ruling from the Court—which it seeks by this motion.

IBM asserts the identity of the individuals who provided Langley with the information contained in the documents is essential to its defense. In IBM's words, the reason it needs to know the identities of the individuals who "leaked" the documents to Langley is that:

Case 1:18-cv-00443-LY   Document 74   Filed 04/10/19   Page 2 of 5

> it will permit the Company to seek discovery straight from the individual(s) who allegedly provided Langley with the information that he claims is at the heart of his case. For example, IBM wants to explore with these individuals whether they made the statements that Langley attributes to them, and whether they have personal knowledge of the matters to which they allegedly spoke. Further, IBM wants to explore whether these individuals made other statements, which Langley has elected not to share, that exonerate the Company. Likewise, IBM wants to explore Langley's documents with these individuals, addressing (among other things) who authored them, whether they were mere drafts, who reviewed them, and whether they have anything at all to do with Langley's separation. And IBM wants to explore whether the individuals have other information that undercuts Langley's claims, such as knowledge that Langley made admissions against interest.

Dkt. No. 59 at 3.  In response, Langley disagrees with IBM's characterization of his testimony, and submitted with his response the full transcript of the deposition.  That transcript demonstrates that Langley did not rely on any statements of anonymous IBM employees to support his claims, but rather relied on the documents themselves, and his understanding of them from his 23 years at IBM. Further, he was questioned in some detail about the documents, and answered all of the questions other than identifying who had provided him with the documents.

Langley makes a two-pronged response to IBM's motion.  First, he contends that the identity of the "leakers" is irrelevant to IBM's defense of its case, because the documents themselves are IBM's and are accessible to IBM (a claim IBM carefully avoids disputing in its reply).  Thus, if IBM needs information about the authorship and provenance of the documents, that is something already within IBM's possession.  Langley also notes the inconsistency in IBM's position in this motion, where it claims it must have additional information about the leaked materials, with its refusal to produce the originals of the documents in discovery on the ground that they are irrelevant.  Second, Langley contends that the identity of the leakers is subject to the "informant privilege" because Langley was a conduit for providing these documents to the EEOC to aid the government in its investigation of IBM's conduct. Langley thus asks that the Court deny IBM's motion, and enter a protective order to "protect the identities of the confidential informant(s)."

2

## II. Analysis

**A.     Informant Privilege**

First, Langley asserts that the identities of the individuals who provided him with the IBM documents he later provided to the EEOC are confidential as they are subject to the "informant's privilege." *Wirtz v. Continental Finance & Loan Co. of West End*, 326 F.2d 561 (5th Cir. 1964). IBM argues, correctly, that this privilege can only be asserted by the government. *Rovario v. United States*, 353 U.S. 53, 59 (1957) ("What courts have termed the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.")  It appears, therefore, that the "informant's privilege" is not applicable here.  The Court need not make a final determination on that issue, however, as it concludes the requested information is irrelevant.

**B.     Relevance**

As noted earlier, IBM contends it needs the identities of the persons who gave Langley the documents in order to defend against Langley's claims.  Langley argues that the identities of the individuals who provided him with the leaked documents is irrelevant to IBM's defense, and that IBM is in possession of all of the relevant information about the documents. The Court agrees. The records at issue were created by IBM, and were allegedly used by high level IBM officials.  IBM surely knows where it can find the documents, and certainly has the ability to track down the authors, versions, and custodians of the documents.[1]  IBM can absolutely assess the authenticity of these

---

[1]If there were ever a party about which a court could feel confident in making such a statement, IBM would be it.  As Langley notes in his response, IBM markets tools it states have the ability to search zettabytes of data quickly.  Dkt. No. 67 at 6 n.14.  It regularly runs commercials touting its "Watson" AI technology, which also has the ability to process immense amounts of data. Surely, IBM has the ability to locate the originals, drafts, and original authors of the "leaked" slides and reports—assuming it has not already done so.

documents on its own—better than any individual who handed the document along to Langley. And as the Court noted earlier, a review of Langley's deposition testimony demonstrates that IBM has not accurately characterized his testimony—he did not testify that he was relying on "statements" made to him by the leakers to support his claims in this case.[2] Indeed, there is nothing in Langley's testimony about the documents or the manner in which he received them that suggests *any* relevant information would be gained from knowing who the leakers were. Rather, it appears that—understandably—IBM wants to plug its leak, and that is the primary motivation for its demand for this information. But as counsel well knows, wanting to plug a leak is not a legitimate basis to support a motion to compel discovery, much less one coupled with a request for sanctions. Because the identity of the leakers is not relevant to any claim or defense in this case, the Court will deny IBM's motion to compel.

---

[2]IBM relies on three examples to support this assertion. Dkt. No. 73 at 4. Once again, IBM has mischaracterized Langley's testimony. For example, IBM states that "when asked about the basis of his understanding of the term 'seniority mix,' Langley testified that he discussed the term with an unnamed person." *Id.* In fact, this is what Langley testified to on that point:

> Q. Have you seen that phrase "seniority mix" anywhere else other than in this particular document that's Langley-IBM 452 to 458?
> A. Not that blatant of phrase, no.
> Q. Did you have any discussion with the person who provided this document to you as to what the understanding of seniority mix was?
> A. A little. I think it's pretty plain.

Dkt. No. 67-6 at 253. Thus, while Langley did have a "little" discussion about the phrase with the IBMer, he never stated that that discussion was what supported his understanding of the phrase "seniority mix." Instead, as he noted, he thought its meaning was "pretty plain"—a statement that is hard to argue with. And the same is the case with the other two examples IBM relies on—in both of those instances, when asked what he based his beliefs on, Langley answered with his own knowledge of IBM. *Id.* at 249, 251. He did not offer the anonymous sources as the basis of his beliefs—he only mentioned the sources when specifically asked "did anyone had ever tell him" those things.

A final note. As should be obvious by now, IBM's conduct in discovery to date has been less than exemplary. It is on thin ice at this point. As set out above, IBM's motion to compel was lacking as far substance is concerned. But it was also weak on the procedure side. Going into Langley's deposition, IBM knew well that if asked to identify his sources for the leaked documents, Langley would object to disclosing that. It thus could have—and should have—raised the issue with Langley's counsel prior to the deposition, and, if unable to resolve it, sought a ruling from the Court. This would have obviated the need to return to the deposition at a later date, and avoided the very costs IBM sought in its sanctions request. The request for sanctions should thus never have been made. The Court is also disturbed by the fact that IBM apparently has, to date, failed to produce the complete originals or other versions of the leaked documents. It is apparent to the Court that any such documents are within the scope of discovery for the claims made by Langley in this case, and the Court therefore **ORDERS** IBM to produce those documents within 20 days of the date of this order.

### III. Order

For the reasons stated, IBM's Motion to Compel Deposition Testimony and for Sanctions (Dkt. No. 59) is **DENIED**, Langley's Motion for Protective Order (contained in Dkt. No. 67) is **GRANTED**, and Langley shall not be required to provide to IBM the names of the individuals who provided him with the internal IBM documents at issue in this motion.

SIGNED this 10th day of April, 2019.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE