THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JONATHAN LANGLEY | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CASE NO. 1:18-CV-00443-LY |
| | § | |
| INTERNATIONAL BUSINESS MACHINES | § | |
| CORPORATION | § | |
| Defendant | § | |

**PLAINTIFF'S MOTION TO COMPEL REQUESTS FOR PRODUCTION AND
DEPOSITIONS AND FOR LEAVE TO EXCEED TEN DEPOSITIONS AND TO
EXTEND THE DISCOVERY PERIOD**

Jonathan Langley's case theory has remained consistent throughout: that IBM's most senior executives created and perpetrated a high-level, nationwide scheme of age discrimination. This theory has been corroborated through diligent, nationwide discovery efforts.  The clearest evidence to date of IBM's scheme are executive level planning documents that reveal a company-wide, systematic strategy to alter the age of IBM's workforce. In two weeks, IBM plans to file a motion for summary judgment. In that motion, IBM will argue that its reasons for these layoffs were nondiscriminatory in nature. IBM will put this argument before the Court while simultaneously withholding all evidence that would show that IBM's proffered reasons are merely a pretext for discrimination. Plaintiff's prior motions have well documented IBM's consistent effort to conceal the executive intent at issue by obstructing discovery. Just yesterday, IBM refused to produce documents that are clearly relevant, within the scope of this Court's order, and containing information proving the executive intent Plaintiff has alleged all along. To justify this refusal, IBM has fallen back on its tried and true delay tactics: refusing to provide discovery outside of an artificial business organization boundary, which was manufactured by its

1

attorneys, in order to conceal the true discriminatory nature of its company-wide layoffs. IBM's obstructionist defiance is in direct contravention to this Court's order on the scope of discovery.[1]

Indeed, Plaintiff has sent numerous Requests for Production of Documents to Defendant IBM. IBM has failed to produce documents responsive unless they specifically relate to the Plaintiff, the CLDR, or are Hybrid Cloud Fall/Spring Plans that the Court specifically ordered to be produced on April 10, 2019. Despite IBM's wholesale refusal to produce documents responsive to many of Plaintiff's requests – Plaintiff only moves at this time to compel documents responsive to Plaintiff's Request for Production of Documents to Defendant IBM Nos. 24-27 and Plaintiff's Fourth Request for Production of Documents (mislabeled "Third" Request for Documents) Nos. 149-154 and No. 156.[2] These requests specifically relate to communications to and from executives and contain search terms specifically designed to produce results relevant to Plaintiff's case-theory. Defendant's responses are deficient and incomplete because Defendant has failed to produce *any* documents responsive these requests. The validity of IBM's objections on the grounds "the request involved senior executives with global responsibilities who had no role in distributing headcount targets in the CLDR resource action, selecting Langley for layoff, or reviewing Langley's subsequent applications for employment" and "that the requests are overly broad in terms of temporal and organizational scope" are discussed at length *infra*.[3]

## I.    Langley is Entitled to Executive Communications.

Under the Federal Rules of Civil Procedure, Mr. Langley is entitled to discovery of any nonprivileged matter that is relevant to any party's claim or defense and that is "proportional to

---

[1] *See* Ex. 1, Pl. First Req. for Produc. to IBM.

[2] Ex. 1, Pl. First Req. for Produc. to IBM; Ex. 14, Pl.'s Fourth Req. for Produc. to IBM.

[3] Ex. 12, IBM's Resp. to Pl.'s First Req. for Produc.;  Ex. 15, IBM's Resp. to Pl.'s Fourth Req. for Produc.

the needs of the case."[4] In considering the proportionality of a discovery request a "[c]ourt must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party."[5] Judge Austin ordered initial discovery at the Hybrid Cloud level with a caveat that this scope could change as IBM's structure was uncovered. Specifically, discovery not to be "constrained by artificial borders created within a corporation."[6]

Prior to filing suit, Mr. Langley discovered leaked secretive executive level planning documents known as "Spring Plans" and "Fall Plans." These plans outlined IBM's covert strategy to terminate older workers in high-level bands and fill the company with young workers, also known as Early Professional Hires. Nine months ago, Mr. Langley requested the production of written communications created or received by executives Diane Gherson, Ken Keverian, James J. Kavanaugh, and Ginni Rometty.[7] The evidence to date confirms that each of these individuals had an active role in creating and/or ratifying IBM's discriminatory corporate scheme.[8] Plaintiff's initial request was narrowly tailored to only 26 search terms pulled almost exclusively from IBM's leaked fall planning documents.[9] Since then, Plaintiff's counsel has offered to work with IBM to further narrow the list of search terms, to which IBM provided no response.[10] Subsequently, Plaintiff sent discovery requests with additional search terms that

---

[4] FED. R. CIV. P. 26(b)(1).

[5] *Philpot v. WOS, Inc.*, No. A-18-CV-339-RP, 2019 WL 252050, at *1 (W.D. Tex. Jan. 17, 2019) (quoting *Cmedia, LLC v. LifeKey Healthcare*, LLC, 216 F.R.D. 387, 389 (N.D. Tex. 2003)

[6] Dkt. No. 52 at 4.

[7] *See* Ex. 1, Pl. First Req. for Produc. to IBM, Nos. 24 – 27.

[8] Ex. 2, 4/18/2019 Dep. Tr. of Stephen Lasher at 230:13-25, 231:10-19, 233:22-234:06, 234:20-236:04; Ex. 3, 5/9/2019 Dep. Tr. of Robert Leblanc at 23:22-24:21, 50:19-21, 139:13-18, 166:23-167:05; Ex. 4, 5/31/2019 Dep. Tr. of Diane Gherson at 62:07-17, 62:25-63:14; Ex. 5, 3/6/2019 Dep. Tr. of Sam Ladah at 39:03-25, 40:17-41:20, 60:13-22, 61:06-16.

[9] *See* Ex. 1, Pl. First Req. for Produc. to IBM, Nos. 24 – 27.

[10] Ex. 6, Correspondence with Defense Counsel Re Narrowing Search Terms.

Plaintiff's counsel knows *for a fact* are contained in executive communications relevant to Plaintiff's case theory of high-level executive involvement.[11] In response, IBM refused to produce documents and continues to limit discovery to an artificial, gerrymandered population – "the CLDR."[12]

### A. The CLDR is an Absolute Fiction, Designed by IBM's Attorneys to Obfuscate IBM's Discriminatory Practices

Discovery to date has proven that the "CLDR" is an absolute fiction. Plaintiff has discovered that he was part of a company-wide layoff plan codenamed "Operation Baccarat". The "CLDR" is supposedly an internally designated subset of Operation Baccarat. Suspiciously, not a single deponent to date has ever heard of "CLDR," and the "CLDR" population has no relation to natural populations contained in Operation Baccarat planning documents.[13] The absurdity of limiting discovery to a fictitious population created to conceal the reality of what was going on is self-evident.

The first documents that reference "CLDR" appeared out of thin air in the final phases of Operation Baccarat planning.[14] In fact, no "CLDR" document even appeared until the month it was carried out.[15] Any attempt by Mr. Langley to inquire about "CLDR" has been conveniently objected to on the basis of privilege and legal work product.[16] The only three CLDR demographic documents produced were all labeled as having been created by IBM's legal

---

[11] Ex. 7, Affidavit of Heidi A. Coughlin; Ex. 14, Pl.'s Fourth Req. for Produc. to IBM. (Mislabeled "Third" Request for Documents)

[12] Ex. 15, IBM's Resp. to Pl.'s Fourth Req. for Produc.

[13] Ex. 8, 6/14/2019 Dep. Tr. of Steven Cowley at 175:12-20; Ex. 2, 4/18/2019 Dep. Tr. of Stephen Lasher at 222:17-24; Ex. 9, 5/17/2019 Dep. Tr. of Alan Wild at 124:06-16, 159:15-161:03; Ex. 10, 3/8/2019 Dep. Tr. of Yara Saad at 31:13-19, 170:15-171:01.

[14] Ex. 11, IBM Production at IBML 1623, 2011, 3261.

[15] *Id.*

[16] *See e.g.,* Ex. 9, Dep. Tr. of Alan Wild at 159:15-161:03.

counsel.[17] The obvious deduction is that IBM's legal department cherry-picked employees from Operation Baccarat to create smaller artificial groups that when analyzed reduced the obviousness of the disparate impact of Operation Baccarat as a whole. IBM's cherry-picking has the added benefit of creating an artificial boundary to insulate IBM's executives from discovery in subsequent legal actions.

Defendant's production related to CLDR confirmed Plaintiff's counsel's suspicion that the numbers were cooked. Mr. Langley worked within the Worldwide Top portion of Hybrid Cloud. The only produced document, "IBML 3261," that purports to contain the age demographics of Plaintiff's cohorts 1) considered and selected for reduction; 2) considered and not selected for reduction; 3) and not considered for reduction contains only 300 people.[18] However, discovery has established that at the time of Plaintiff's selection for layoff, Woldwide Top contained between 488 and 700 employees.[19] Despite repeated requests, IBM's counsel has provided no explanation for this glaring numerical discrepancy in the employees that were not contained in IBML 3261.

As further proof of the concocted nature of the artificial boundary known as the "CLDR," Operation Baccarat spreadsheets produced in discovery contain a list of 41 employees working under manager Andrew Brown—including Langley—who were being considered for layoff.[20] IBML 3261, referenced above, only contains 7 of those 41 employees.[21] The Operation Baccarat

---

[17] Ex. 11, IBM Production at IBML 1623, 2011, 3261.

[18] *Id.* at IBML 3261.

[19] Ex. 8, 6/14/2019 Cowley Dep. Tr. at 10:14-19; Ex.11, IBM's Production at 00344.

[20] Ex. 11, IBM Production at 1690A, p. 2-4 (Andrew Brown Tab)

[21] Ex. 16, Demonstrative Showing List of Employees Under Andrew Brown Tab IBML 1690A vs. CLDR IBML 3261

spreadsheet reflects the natural population of persons being considered for layoff; the CLDR spreadsheet is clearly a contrived fiction.

> **B.     Mr. Langley is entitled to documents created or received by Executives that contain specified search terms that would reveal the discriminatory motives behind IBM's termination of Mr. Langley.**

In Plaintiff's initial requests for production nine months ago, Mr. Langley sought documents from a small number of IBM executives containing specific search terms that were designed to reveal any evidence of IBM's discriminatory layoffs.[22] IBM repeatedly objected to those requests, on the grounds that the executives had global responsibilities, and were not involved in the distribution of headcount targets in the (artificial) CLDR resource action.[23]

Mr. Langley's original and ongoing case theory has never been that the discrimination perpetrated against him was merely an instance of one rogue first-line manager who fired him because of his age. To the contrary, his case theory has always been that he was one of the many victims of a company-wide layoff initiative created by IBM's highest executives. Langley agrees that these executives did indeed have "global responsibilities." Those "global responsibilities" led to the discriminatory reshaping of IBM's workforce, which is exactly what Plaintiff fell victim to. Any assertion that executives are somehow far removed from the planning process because their job title includes "global responsibilities" rings hollow.

Among others, Plaintiff seeks discovery from the Chief Human Resources Officer ("CHRO") and the CEO, Diane Gherson and Ginni Rometty, respectively.   Both have continuously and publicly touted their success in transforming IBM, pointing to millennials and "New Collar" programs as the vehicles for achieving such transformation.[24]   In response to a

---

[22] *See* Ex. 1, Pl. First Req. for Produc. to IBM, Nos. 24 – 27.

[23] Ex. 12, IBM's Resp. to Pl.'s First Req. for Produc., Nos. 24 – 27.

[24] https://www.youtube.com/watch?v=fgc4aJ-JMJg&app=desktop at 2:45.

reporter's observation that the face of IBM appeared much younger than its "old school image," Rometty touted, "50% of IBM is millennials."[25] Indeed, IBM investor relation's documents confirm 50 percent of IBM employees were hired in the last five years.[26] This mirrors the sentiments found in IBM's high level planning documents that contain an emphasis on increasing the percentage of young employees working at IBM.[27] In a 2017 interview discussing IBM's reinvention, a reporter commented on how difficult it must be "to change a lot of these young people, that means there were older people that had to leave."[28] When asked if this was hard on Rometty she replied, "no . . . it's in my DNA and I think it's in IBM's DNA to keep changing and this is just what you do."[29] Rometty has publicly stated that she attributes a part of IBM's transformation to Gherson as the CHRO and her ability to "reimagin[e] how we recruit new talent across the world."[30] In response to one millennial intern's efforts to upgrade a PowerPoint slide to a video presentation, Gherson offered up the stereotype that, "[i]t's break-through thinking like this that you wouldn't have gotten prior to this generation."[31] Clearly, stereotyping based on age is the driving force behind IBM's scheme to terminate older workers.

As previously referenced, Plaintiff's counsel knows *for a fact* that communications exist between the CEO and other executives reflecting direct involvement in talent refreshment programs and hiring.[32] IBM is admittedly aware that there is a correlation between older age and

---

[25] *Id.* at 4:22.

[26] Ex. 13, IBM Investor Relations Documents, at Langley-IBM 0872.

[27] Ex. 11, IBM Production at IBML 003241-3260.

[28] https://www.youtube.com/watch?v=fgc4aJ-JMJg&app=desktop at 16:55

[29] *Id.*

[30] https://www.youtube.com/watch?v=vpE-CS_ReWQ at 0:58.

[31] http://cahrs.ilr.cornell.edu/Spectrum/detail.aspx?id=10108

[32] Ex. 7, Affidavit of Heidi A. Coughlin

higher bands.[33] One planning document reveals the CEO's personal involvement in grooming young professionals to assume positions that are in the same band level, unit, and organization as Plaintiff.[34] The CEO's personal involvement dovetails perfectly with a specific program Gherson created to eliminate employees in higher bands to make more room for young professionals.[35] Because IBM knows employees in higher bands are generally older, IBM certainly knows eliminating employees in higher bands equates to eliminating older employees.

### C. Plaintiff Langley is Entitled to Apex Depositions to Depose these Executives.

In addition to communications requested above, Plaintiff is entitled to depose these IBM executives including James Kavanaugh, Martin Schroeder, and Ginni Rometty. Case law supports the depositions of high level executives where "conduct and knowledge of the *highest levels of the corporation* are relevant to the case."[36] In *Simms. v. Nat'l Football League*, the Court ordered the deposition of NFL Commissioner Roger Goodell where it found that Goodell had first-hand knowledge of information related to plaintiff's claim.[37] The court based its decision on relevant public statements made by Mr. Goodell and his direct involvement in the planning of Super Bowl XLV.[38] In the case at bar, Langley has proven that the highest levels of IBM's corporate structure, including Rometty herself, helped plan, coordinate, and shape the company-wide scheme of age discrimination that ultimately led to the Mr. Langley's termination.

---

[33] Ex. 4, 5/31/2019 Dep. Tr. of Diane Gherson at 144:17-145:07.

[34] Ex. 11, IBM Production at IBML 002353

[35] Ex. 4, 5/31/2019 Dep. Tr. of Diane Gherson at 190:09-191:17

[36] *See Sanchez v. Swift Transportation Co. of Arizona, L.L.C.*, No. PE: 15-CV-15, 2016 WL 10589438, at *2 (W.D. Tex. Apr. 22, 2016) (quoting *Baedeker Holdings VII, Ltd. v. Mills,* No. 3:15-MC-36-D-BN, 2015 WL 3539658, at *3 (N.D. Tex. June 5, 2015)) (emphasis added).

[37] *Simms. v. Nat'l Football League,* No. 3:11-CV-0248-M-BK, 2013 WL 9792709, at *3 (N.D. Tex. July 10, 2013).

[38] *Id.*

An apex deposition is appropriate when the party can demonstrate through documents and testimony that a senior corporate executive possesses knowledge relevant to the litigation.[39]  In *Sater*, Fifth Circuit noted that depositions of senior corporate executives are not wholesale prohibited, and reiterated the legal requirements that a party must first (1) demonstrate that the information sought through an apex deposition is relevant, and (2) cannot be obtained through a less intrusive means.[40]

Langley has satisfied his burden to seek information through lesser-intrusive means. He has taken the depositions of: (1) Yara Saad, a low-level vice president of human resources for Software Sales; (2) Sam Ladah, Vice President of Talent for IBM; (3) Stephen Lasher, Chief Financial Officer (CFO) of Hybrid Cloud; (4) Alan Wild, Vice President of Human Resources and Engagement; and (5) Diane Gherson IBM's Chief Human Resources Officer. In these depositions, Plaintiff establish that the Fall and Spring Planning meetings were held in person, and the communications were done verbally.[41] Hence, merely obtaining the communications reviewed and created by these Apex IBM executives would not provide Plaintiff with a record of what executives said and why it was said.

Above all, the most important fact Langley has established is that the IBM CEO, Ginni Rometty, was present and providing feedback at company-wide/unit planning meeting that contained references to the discriminatory scheme.[42] Accordingly, the only means to determine the scope and extent of Rometty's and other executives' beliefs and input in shaping the

---

[39] *See e.g. United States v. McKesson Corp.,* No. 2:08CV214-SA-DAS, 2011 WL 2708494, at *1 (N.D. Miss. July 11, 2011).

[40] *See Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir. 1979).

[41] Ex. 2, 4/18/2019 Dep. Tr. of Stephen Lasher at 230:13-25, 231:10-19, 233:22-234:06, 234:20-236:04; Ex. 3, 5/9/2019 Dep. Tr. of Robert Leblanc at 23:22-24:21, 50:19-21, 139:13-18, 166:23-166:05; Ex. 4, 5/31/2019 Dep. Tr. of Diane Gherson at 62:07-17, 62:25-63:14; Ex. 5, 3/6/2019 Dep. Tr. of Sam Ladah at 39:03-25, 40:17-41:20, 60:13-22, 61:06-16.

[42] *Id.*

discriminatory scheme at issue, is by and through their depositions. No other means of discovery will suffice.

For the aforementioned reasons, Plaintiff's counsel has requested the depositions of Ginni Rometty, Jim Kavanaugh, and Mark Schroeder. Defense counsel has refused all of these requests. Additionally, defense counsel claims Plaintiff should be limited to ten depositions pursuant to Fed. R. Civ. P. 30(a)(2)(A).

## II.  Plaintiff Seeks Leave to Exceed the Ten Deposition Limit and for a 90-Day Extension to the Discovery Period.

### A.  Plaintiff Langley Requests Leave to Exceed the Ten Deposition Limit.

Fed. R. Civ. P. 30(a)(2)(A) outlines a presumptive limit on the number of depositions that may be taken in a civil suit.[43] When a party seeks leave to take more than ten depositions, the court's decision whether to grant such leave is governed by the principles set out in Fed. R. Civ. P. 26(b)(2).[44] The Court "must grant leave," unless it finds that "the discovery sought is unreasonably cumulative . . . ,[and] the party seeking discovery has had ample opportunity to obtain the information," or the burden of discovery outweighs the likely benefit.[45]

Plaintiff has adequately established in discussions *supra* that other means of obtaining this information has not been provided by Defendant. Accordingly, these requested depositions are not unreasonably cumulative. Furthermore, Plaintiff has not had ample opportunity to obtain this information from elsewhere. As stated above, the need for this discovery is essential for responding to Defendant's Motion for Summary Judgment.

---

[43] FED. R. CIV. P. 30(a)(2)(A).

[44] *See Barrow v. Greenville Independent School District*, 202 F.R.D. 480, 482 (N.D. Tex. 2001); *see also United States v. Goertz*, No. A-09-CA-179 LY, 2010 WL 2900309, at *1 (W.D. Tex. July 20, 2010).

[45] *Id*. at 26(b)(2)(C)(i – iii).

**B.** **As demonstrated above, IBM has once again hampered Discovery in this case by returning to its tried and true Delay Tactics. Accordingly, Plaintiff asks for a 90 day Extension to the Discovery Period.**

As discussed, IBM has returned to its previous Discovery delay tactics, and has tried to limit Mr. Langley's Discovery in this case by restricting its Discovery Responses to arbitrarily created business organizations—in this case the "CLDR." This tactic is eerily similar to IBM's previous behavior. Previously, IBM tried to limit Plaintiff Langley's Discovery to the small business unit Langley was directly a part of, despite the fact that the evidence clearly encompassed a greater swath of IBM's corporate structure.   On January 30, 2019, this Court recognized that this behavior was inappropriate, and directed IBM to produce documents and supplement its discovery. Accordingly, since IBM is once again delaying Discovery using the exact same method, Plaintiff requests that this Court modify the scheduling order, and extend the Discovery period by 90 days, from June 25, 2019 to September 23, 2019.

Modification of a scheduling order must be justified by showing "good cause" and "may only be modified for good cause with the judge's consent."[46] The good cause standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." [47] Here, Plaintiff diligently pursued discovery in this matter by timely written requests for these executive communications and these depositions. Yet, as discussed, IBM's repeated objections and delay tactics have thwarted Plaintiff's discovery efforts and made it impossible for Plaintiff to complete discovery by the June 25, 2019 deadline. For the foregoing reasons, Plaintiff respectfully requests a 90-day extension of the discovery deadline from June 25, 2019 to September 23, 2019.

---

[46] FED. R. CIV. P. 16; *see S&W Enterprise, L.L.C. v. SouthTrust of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003); *see also Crawford v. San Marcos Indep. Sch. Dist.*, No. A-09-CA-649 LY, 2011 WL 2970576, at *2 (W.D. Tex July 20, 2011).

[47] *S&W Enterprises, L.L.C.*, 315 F.3d at 535 (internal citations omitted).

III.     **CONCLUSION**

Plaintiff's Discovery disputes with IBM have spanned nine months, and Plaintiff has spent tens of thousands of dollars in attorney's fees responding to IBM's attempts to limit Plaintiff's Discovery. As outlined in this motion, IBM has repeatedly returned to its tried and true delay tactic: pointing to artificial organizational borders as a means of limiting the scope of discovery and running out the clock. This tactic has prevented Mr. Langley from obtaining discoverable executive communications, taking executive depositions, and properly preparing his case to respond to a Motion for Summary Judgment and trial. Accordingly, Plaintiff Jonathan Langley requests that this Court (1) compel IBM to produce Executive communications responsive to Plaintiff's Requests for Production of Documents 24 – 27, 149 – 154, and 156; (2) compel the apex depositions of high level IBM Executives; (3) grant Plaintiff leave to exceed ten depositions in this matter; and (4) extend the discovery period by 90-days.

Respectfully submitted,

_____
Heidi A. Coughlin
State Bar No. 24059615
Archie Carl Pierce
State Bar No. 15991500
Blair J. Leake
State Bar No. 24081630
WRIGHT & GREENHILL, P.C.
900 Congress Avenue, Suite 500
Austin, Texas 78701
512/476-4600
512/476-5382 (Fax)
HCoughlin@w-g.com
CPierce@w-g.com
BLeake@w-g.com

Charles A. Lamberton*
Lamberton Law Firm, LLC
Pa. Bar I.D. No. 78043
707 Grant Street
1705 Gulf Tower
Pittsburgh, PA 15219
412-258-2250
cal@lambertonlaw.com
*Admitted Pro Hac Vice

*Attorneys for Plaintiff*
*Jonathan Langley*

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiff has complied with the Court's requirement to confer. Plaintiff's counsel has repeatedly conferred with IBM's counsel and could not reach an agreement on IBM's production responses.  Therefore, Defendant IBM opposes this motion.

_____
Heidi A. Coughlin

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2019, I electronically filed the foregoing Plaintiff's Motion to Compel Requests for Production and for Leave to Exceed Ten Depositions and Extend the Discovery Period with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the Court and Plaintiff's counsel.

_____
Heidi A. Coughlin