IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JONATHAN LANGLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:18-cv-00443-LY |
| | ) |
| INTERNATIONAL BUSINESS | ) |
| MACHINES CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT IBM'S MOTION TO EXCLUDE
EXPERT REPORT AND TESTIMONY OF RHOMA YOUNG**

IBM hereby moves to exclude in their entirety the Report and testimony of Plaintiff's proffered human resources expert, Rhoma Young.[1] First, Young opines on whether Langley's selection for separation in a resource action was part of a pattern. But any "pattern" of layoffs (which IBM, in any event, denies) is irrelevant in this *single-plaintiff* discrimination case. *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016). Second, Young opines on whether IBM's policies and practices for reductions-in-force comport with recognized industry standards. But Young conceded at her deposition that – by and large – IBM's procedures *do* comport with her view of industry standards. Young has a lone quibble: she contends that IBM should have provided Langley with Older Worker Benefit Protection Act data disclosures, but (i) she conceded that IBM *had no duty to do so*, and (ii) she could point to no industry guidance stating that such disclosures should be provided when they are not required. Third, Young opines that IBM deviated from its own resource action procedures. But expert testimony regarding whether an employer "failed to abide by . . . its own policies in connection with [a] termination" does not aid the trier of fact because the issue is "not so complex as to require expert explanation." *Grimes v. Wal-Mart Stores Tex., LLC*, 2012 U.S. Dist. LEXIS 193330, at *6 (W.D. Tex. Jan. 23, 2012). These are just a few of the fundamental – and fatal – flaws with the proposed testimony.[2]

Because Young's testimony is unreliable, is based on insufficiently or misleading

---

[1] The Report of Rhoma Young ("Report") is attached hereto as Exhibit A to the Declaration of Joanne Bush ("Bush Decl.").

[2] Young's expert testimony has been repeatedly excluded on similar grounds. *Miller v. United Parcel Serv., Inc.*, 2004 WL 1771571, at *16 (N.D. Cal. Aug. 6, 2004), aff'd, 196 F. App'x 489 (9th Cir. 2006); *Moussouris v. Microsoft Corp.*, 311 F.Supp.3d 1223 (2018); *English v. Estes Express Lines*, 2018 WL 1136058 (C.D. Cal. Feb. 15, 2018); *Jelin v. San Ramon Valley Unified Sch. Dist.*, No. 16-cv-5986, Order Granting in Part and Denying in Part Plaintiff's Motion in Limine No. 1, Dkt. No. 133 at p. 4 (N.D. Cal. Nov. 5, 2018); *Hong v. Right Mgm't Consultants, Inc.*, No. 04-cv-04011, Final Pretrial Order, Dkt. No. 233 (N.D. Cal. May 1, 2006).

representations, and is rife with speculation, Plaintiff cannot meet his burden to prove that it is admissible. *See* Fed. R. Evid. 702. What is more, given these flaws and others, allowing Young to testify as a human resources expert would unfairly prejudice IBM. *See* Fed. R. Ev. 403. Thus, the Court should exclude Young's Report and testimony.

## ARGUMENT

Young's proffered Report and testimony should be excluded. "The party proposing an expert's testimony has the burden to prove that the testimony is admissible by a preponderance of the evidence." *Grimes v. Wal-Mart Stores Tex., LLC*, 2012 U.S. Dist. LEXIS 193330, at *6 (W.D. Tex. Jan. 23, 2012). To be admissible, the proposed testimony must be both relevant and reliable. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (citing Fed. R. Evid. 702). To be reliable, the testimony must (a) employ specialized knowledge to assist the trier of fact in understanding the evidence or in determining a fact in issue; (b) be based on sufficient facts or data; (c) be the product of reliable principles and methods; and (c) reliably apply these principles and methods to the facts of the case. Fed. R. Evid. 702.

## I. THE COURT SHOULD EXCLUDE YOUNG'S TESTIMONY THAT LANGLEY'S TERMINATION WAS PART OF A "PATTERN" OF LAYOFFS

The bulk of the Report and proposed testimony is dedicated to an explanation of the basis for Young's opinion regarding "policies and practices of IBM involving [Plaintiff's] lay off and how . . . that connected to the pattern of prior and ongoing series of layoffs of older, longer term IBM employees." (Report at 1.) But Young's proffered testimony is irrelevant, and thus should be excluded. *See Joseph v. Signal Int'l L.L.C.*, 2015 U.S. Dist. LEXIS 180308 at *9 (under Fed. R. Evid. 702, "the court must determine that the proffered expert testimony is relevant"). This is a single-plaintiff discrimination case; the only issue for the trier of fact is whether Plaintiff can prove that he was terminated on the basis of age. And it is settled law in the Fifth Circuit that a plaintiff asserting an individual claim of discrimination may *not* rely on evidence of a "pattern or

2

practice" of discrimination. *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016) ("[T]he pattern-or-practice method of proving discrimination is unavailable in a private, non-class action . . . ."); *Roy v. U.S. Dep't of Agri.*, 115 F. App'x 198, 201 (5th Cir. 2004) ("Roy similarly fails on her 'pattern and practice of discrimination' claim as it is inapplicable to her individual claim of racial discrimination."); *Richmond v. Coastal Bend Coll. Dist.*, 883 F. Supp. 2d 705, 718 (S.D. Tex. 2012) ("Because this is a private, non-class action lawsuit, plaintiffs are foreclosed from seeking to prove their claims by showing that defendants engaged in a pattern or practice of discrimination."). Thus, in a non-class action, expert opinion relying on or asserting the existence of a "pattern or practice" of discrimination is irrelevant and inadmissible. *Pipitone*, 288 F.3d at 245 (expert testimony only admissible if both reliable and relevant).

Here, the bulk of Young's proposed testimony pertains to what she alleges is a pattern of layoffs of older workers. Indeed, Young repeatedly conceded at her deposition that her focus was *not* on the circumstances of Plaintiff himself, but instead on an alleged, broader "pattern." (Young Dep. 84:19-85:4 (analysis of Langley as "a representative of a certain person of a certain age and length of service and salary that was affected by that workforce reduction"); 85:5-15 ("I've got some specific information about Mr. Langley . . ., but my view was generally broader than that"); 117:17-23 ("The pattern [of layoffs] has impacted my opinion"); 190:25-191:2 ("In terms of [Langley] personally, I'm not talking about him personally, I'm talking about collectively the total numbers."); 194:11-16 (explaining that Langley "was one of the people cut, and he fit the profile of . . . people who were cut on a wholesale basis").)[3] Such testimony, well beyond the circumstances of Langley's separation, is irrelevant and would confuse the jury. *Richmond*, 883 F. Supp. 2d at 718.

---

[3] Relevant excerpts from Young's deposition are attached as Exhibit B to the Bush Decl.

To the limited extent that Young *does* opine as to the circumstances of Langley's separation, such testimony must be excluded because it is based on insufficient facts. *Grimes*, 2012 WL 12883080, at *2 ("reliability analysis applies to all aspects of an expert's testimony," including "the facts underlying the expert's opinion") (citation and internal quotation omitted). Young conceded as much at her deposition. (Young Dep. 84:25-85:1 (analysis "was less focused on Jonathan Langley's particular personal process"); 85:10-15 ("I've got some specific information about Mr. Langley. . . . [B]ut my view was generally broader than that"); 193:12-15 ("You're slicing and dicing. What I'm saying is I'm talking about it on a broader scale"); 193:10-11 ("**Q:** [T]his is a single plaintiff case ma'am, and I am trying to understand – – **A:** And you – you're stuck. Because it's part of a pattern. It didn't happen by itself."); 194:1-3 ("**A:** That applies to a larger group. **Q:** Okay. Not to Mr. Langley? **A:** That's right.").) Indeed, Young confirmed that she could not offer an opinion as to Langley because his immediate supervisor, Kim Overbay, was not deposed in the case. (Young Dep. 71:6-72:21 ("I said I can't answer about Jonathan Langley specifically because I don't have Overbay's information").) Further, although the crux of Young's testimony relates to the purported "manipulation" of the resource action process, when asked whether the process for *Langley* was manipulated, Young conceded that she did not "have that as an opinion." (Young Dep. 130:2-7; *see also id.* at 136:19-137:1 ("the process seemed to be manipulated to come up with a predetermined outcome, not specifically for Mr. Langley but for another employee").)

In any event, Young's proposed testimony has yet another fatal flaw: it is based on an incorrect and incomplete recitation of facts. *Guillory v. Domtar Indus.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (excluding expert testimony that was "not based upon the facts in the record but on altered facts and speculation designed to bolster Deere's position"); *Moussouris v. Microsoft*

*Corporation*, 311 F.Supp.3d 1223, 1244 (W.D. Wash. 2018) (excluding Young's testimony because "[o]pinions that are derived from erroneous or incomplete data are properly excluded"). For example, in an attachment to her Report, Young includes a timeline of events. (Report, Exh. 3.) The timeline reflects emails in which Plaintiff received positive feedback for his job performance. (*Id.*) But, at her deposition, Young conceded that she omitted emails reflecting instances of poor performance by Plaintiff. (Young Dep. 80:10-22.) Likewise, to support her assertions regarding changes to the age of IBM's employee population, Young asserted that IBM has restructured its workforce to "dramatically chang[e] its demographic profile." (Report at 3.) But, at her deposition, Young admitted that she did not review any documents reflecting IBM's actual demographic profile. (Young Dep. 200:7-19.) And, to bolster her assertion that IBM targeted older works in favor of Millennials, Young pointed (Young Dep. 266:14-268:6) to what she believed were internal IBM documents showing that the company was favoring Millennial hires. But, at her deposition, Young conceded that such documents were "created for customers" "so I may have to take that back." (Young Dep. at 268:1-272:22.) Not only that, Young conceded that she relied on documents irrelevant to Langley's situation, which were prepared *after* he separated from IBM. (Young Dep. at 254:6-16; 259:3-9; 261:10-15 ("I was not zeroing in on the time or period Mr. Langley was working there or leaving.").)

      Young's Report is also rife with speculation, which is yet another reason to exclude her testimony. *Guillory*, 95 F.3d at 1331. Indeed, in a prior case, Young took an opposing expert witness to task for heavy reliance on speculation. *English v. Estes Express Lines, Inc.*, No. 5:16-cv-1353-CAS, HR Expert Witness Rebuttal Report of Rhoma Young, Dkt. No. 109-3 at p. 18 (C.D. Cal. Jan. 16, 2018) ("That is what is called speculation, and that is not an appropriate approach, nor a legitimate basis for an opinion of an expert in human resources to offer."). Here,

Young engaged in the same "[in]appropriate approach" that she previously derided. Young repeatedly asserts that IBM engaged in widespread "manipulation" of the resource action process. (Report at 11.) But this is nothing more than speculation. (*Id.* at 11 ("*If* that kind of manipulation occurred in other selection and performance evaluation processes . . .") (emphasis added)). Such speculation is spread throughout her Report, and is the foundation to Young's conclusions. (*See, e.g.*, Report at 6 ("*One can only assume*, enabling such an employee to do such analysis would portray the devastating results of the continuing layoffs."); *id.* at 9 ("*If* IBM has such positive data or did such analysis, *it would have* a vested interest in disclosing that data."); *id.* ("*if* they had reached a point . . . , the selection process *was going to* become more challenging . . ."); *id.* at 10 ("*If so*, *then* IBM is relying on generalized stereotypes . . ."); *id.* ("*If that* translates into age playing a role . . . "); *id.* ("*If IBM* has such quantifiable information . . ."); *id.* at 12 ("When IBM changed its performance review process . . . you have to ask why? What was IBM trying to achieve?"); *id.* at 14 ("*If accurate*, that resulted in RA employees having no viable chance to find an internal position . . ."); (emphasis added)). Thus, Young's testimony as to a purported pattern of layoffs, and how that pattern related to Langley, should be excluded.

## II. THE COURT SHOULD EXCLUDE YOUNG'S TESTIMONY REGARDING "SUGGESTED MANAGEMENT PRACTICES"

Young also purports to opine on whether IBM's policies and practices are consistent with what Young terms "Suggested Management Practices" for a reduction in force. (*See* Report at 1.) These opinions should be excluded because they are not based on "reliable principles or methods." Fed. R. Evid. 702; *see also id.* at Advisory Committee Notes (expert must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts"). "An expert cannot rely on the mere fact of [her] experience with respect to human resources matters to support [her]

6

conclusion." *Moussouris*, 311 F.Supp.3d at 1246 (citation and internal quotation omitted); *Miller v. United Parcel Serv., Inc.*, 2004 WL 1771571, at *16 (N.D. Cal. Aug. 6, 2004), aff'd, 196 F. App'x 489 (9th Cir. 2006) (excluding Young's testimony on "recognized management practices" because she pointed to no source for those practices).

Here, notwithstanding the opinion offered in her Report, Young conceded at her deposition that IBM's reduction-in-force guidelines do – by and large – comply with "Suggested Management Practices." (Young Dep. 112:22-113:17, 127:2-8.) She could only quibble with the fact that IBM did not provide Langley with the demographic data called for under the Older Workers Benefit Protection Act ("OWBPA") – notwithstanding the fact that IBM *had no obligation* to provide this data because IBM did not seek a release of ADEA claims.[4] (Young Dep. 87:23-89:2.) Young asserts that an employer should provide OWBPA disclosures in *every* layoff situation, regardless of whether a waiver of ADEA claims is sought, and cites to Society for Human Resources Management ("SHRM") guidelines for this opinion. (Report at 8.) But the SHRM guidelines cited by Young *do not* instruct that employers should provide *all* separating employee with OWBPA disclosures. The SHRM guidance merely recommends that an employer "determine *whether* release agreements will be required" and, "*[i]f so*, determine what it will take to comply with [OWBPA]." (Report Ex. 7, p. 105 (emphasis added)). Confronted with this language at her deposition, Young admitted the SHRM guideline "doesn't give advice one way or the other to [seek a release]" and provide OWBPA disclosures. (Young Dep. 110:23-24.) Thus, her opinion that IBM deviated from "Standard Management Practices" by failing to

---

[4] Young's Report conflates an employer's internal adverse impact analysis with the OWBPA disclosures that are provided to laid off employees when an employer seeks a release of ADEA claims. However, she clarified in deposition that to the extent she opines on demographic "analyses" in her Report, she is referring to OWBPA disclosures, not adverse impact analyses. Young Dep. 155:14-156:8.

7

provide OWBPA disclosures is wholly unsupported, and thus not admissible.

### III. THE COURT SHOULD EXCLUDE YOUNG'S PROFFERED TESTIMONY REGARDING IBM'S COMPLIANCE WITH ITS OWN POLICIES

Plaintiff also seeks to proffer Young's testimony regarding whether "the process used to select Mr. Langley" for separation "mirror . . . IBM's own stated policies and procedures." (Report at 1; *see also id.* at 1 ("It is my opinion that while IBM had defined methodologies that were designed to govern workforce reductions, they were blithely ignored or manipulated . . ."); *id.* at 3 ("It is my opinion that IBM carried out years of actions counter to its own policies . . .")). But Plaintiff cannot meet his burden regarding this proposed testimony for multiple reasons.

For starters, courts routinely exclude the testimony of human resource experts who seek to opine on whether an employer followed its own policies. For example, in *Grimes v. Wal-Mart Stores Tex., LLC*, the court excluded expert testimony that the defendant employer "failed to abide by sound employment practices or its own policies in connection with the termination of [plaintiff]." 2012 U.S. Dist. LEXIS 193330, at *6 (W.D. Tex. Jan. 23, 2012). The court emphasized that such testimony would not aid the trier of fact "because Defendant's employment/career policies, and the manner in which they are alleged to have deviated from them, are not so complex as to require expert explanation." *Id.* at *10. Such testimony would "offer[] nothing more than what Plaintiff[']s counsel can assert in closing arguments, introduce through exhibits, or elicit in the examination of lay witnesses." *Id.* at *11; *see also Neely v. PSEG Tex., LP*, 2012 U.S. Dist. LEXIS 192922, at *9 (W.D. Tex. May 29, 2012) (similar).

Indeed, Young's own testimony has been repeatedly excluded on similar grounds. *English v. Estes Express Lines*, 2018 WL 1136058, at *11 (C.D. Cal. Feb. 15, 2018) (excluding Young's testimony as to whether company had "failed to follow [its own] policies"); *Hong v. Right Management Consultants, Inc.*, No. 04-cv-04011, Final Pretrial Order, Dkt. No. 233 (N.D.

Cal. May 1, 2006) (similar); *Jelin v. San Ramon Valley Unified School District*, No. 16-cv-5986, Order Granting in Part and Denying in Part Plaintiff's Motion in Limine No. 1, Dkt. No. 133 at p. 4 (N.D. Cal. Nov. 5, 2018) (excluding Young's summation of deposition testimony because lay witnesses "can and will speak for themselves").

Young's proffered testimony in this case, likewise, would not assist the trier of fact. Young asserts that IBM did not follow its own resource action procedures, and Young includes a lengthy recitation (Report at 3-7, 9-14) of her view of the facts to support this conclusion. But counsel for Plaintiff can present evidence and elicit fact testimony on IBM's policies and practices, and whether IBM followed the policies and practices. Moreover, Young punctuates her opinion with invective and inflammatory language. (*E.g.*, Report at 1 (processes were "blithely ignored or manipulated"); *id*. at 2 (selection process was "a joke"); *id*. at 3 (information was "kept a deep and dark secret" to "deny, ignore or minimize" responsibility); *id*. at 5 (layoffs used to eliminate older employees, and IBM "simply does not publicly admit it") *id*. at 13 (evaluation process a "gross manipulation," "false, purposeful and tragic," and "a farce")). But this is fodder for an attorney's closing argument – and not an expert's testimony. *Grimes*, 2012 U.S. Dist. LEXIS 193330, at *6 (excluding expert testimony that "offers nothing more than what Plaintiff[']s counsel can assert in closing arguments"); *Joseph*, 2015 U.S. Dist. LEXIS 180308, at *45 (excluding expert testimony that "simply regurgitate[d] [a party's] theory of the case" and "read more like an opening statement than an expert report"); *Jelin*, No. 16-cv-5986, Dkt. No. 133 at 3 ("Ms. Young's opinion is rife with these impermissible broadsides against Plaintiff"). Thus, Young's testimony regarding IBM's compliance with its own policies should be excluded.

**IV. YOUNG'S OPINION INTRUDES ON THE ROLE OF THE TRIER OF FACT**

Young's proposed opinion is also flawed because she opines on matters that fall within the purview of the trier of fact. For example, expert testimony as to legal conclusions is

9

inadmissible. *U.S. v. Thomas*, 847 F.3d 193, 206 (5th Cir. 2017) (expert legal opinions inadmissible); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) (excluding expert that used "legal terms of art" under federal discrimination law). Here, Young offers legal conclusions on whether IBM's actions had "legitimate business purposes." Report at 2; ("For these layoff actions to be considered legitimate business decisions, unanswered questions must be answered . . ."); *id*. at 12 (if performance evaluation process made it more difficult to quantify good performance, "then it is not performing a viable or legitimate business purpose.")). Such testimony goes to the heart of what the trier of fact must decide, and thus cannot be admitted. *Burns v. Tex. City Ref.*, 890 F.2d 747, 750 (5th Cir. 1989) (employer must "articulate a legitimate business reason for the employee's termination").

Moreover, questions of credibility are for the jury, and expert testimony assessing credibility is inadmissible. *Joseph*, 2015 U.S. Dist. LEXIS 180308 at *47. Young's testimony has previously been excluded for assessing credibility. *Jelin*, No. 16-cv-5986, Dkt. No. 133 at p. 4 ("allowing an expert on human resources – the area for Ms. Young is proffered as an expert – to give her opinion about the integrity of a party is likely to create unfair prejudice"). Here, Young assesses the credibility of IBM's HR processes and personnel, calling IBM's layoff selection process "a farce." (Report at 13; Young Dep. 137:7-20 ("[i]t just destroys the credibility of that entire process . . . once HR has participated in that process, their role, their work is entirely subject to – you can't trust it"); Young Dep. 130:8-18 ("the whole iteration of how documents were filled out" and "how worksheets were filled out is not legitimate"). This assessment of credibility is improper, and should not be permitted.

## CONCLUSION

For the foregoing reasons, IBM respectfully moves to exclude the testimony and Report of Rhoma Young.

Dated: July 1, 2019

Respectfully submitted,

*/s/ Joanne R. Bush*
Alison B. Marshall*
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Phone: (202) 879-7611
Fax: (202) 626-1700
abmarshall@jonesday.com
**Admitted Pro Hac Vice*

Matthew W. Lampe*
JONES DAY
250 Vesey Street
New York, NY 10281
Phone: (212) 326-7838
Fax: (212) 755-7306
mwlampe@jonesday.com
**Admitted Pro Hac Vice*

Brian M. Jorgensen
(Texas Bar No. 24012930)
JONES DAY
2727 North Harwood Street
Dallas, Texas 75204
Phone: (214) 969-3741
Fax: (214) 969-5100
bmjorgensen@jonesday.com

Joanne R. Bush
(Texas Bar No. 24064983)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Phone: (832) 239-3782
Fax: (832) 239-3600
jrbush@jonesday.com

*Attorneys for Defendant
International Business Machines Corporation*

## CERTIFICATE OF CONFERENCE

Counsel for Defendant IBM has complied with the Court's meet and confer requirement under Local Court Rule CV-7(i).  On July 1, 2019, IBM's counsel conferred in person with Langley's counsel regarding IBM's intention to file a motion to exclude the report and testimony of Rhoma Young.  Langley's counsel indicated that she opposed IBM's Motion.

/s/ *Joanne R. Bush*  
Joanne R. Bush

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2019, true and correct copies of the foregoing were served via ECF on the Court and all counsel of record.

/s/ *Joanne R. Bush*
Joanne R. Bush
