**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| JONATHAN LANGLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-00443-LY |
| | ) | |
| INTERNATIONAL BUSINESS | ) | |
| MACHINES CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT IBM'S MOTION TO EXCLUDE
EXPERT REPORT AND TESTIMONY OF DANIEL KUANG**

IBM hereby moves to exclude the Report and testimony of Plaintiff's statistical expert, Daniel Kuang, who purports to opine that "age is significantly related to termination outcomes at IBM." (Report[1] at 3 (Conclusions).) But Kuang's conclusion is not reliable. *See* Fed. R. Evid. 702. Kuang cherry-picks the data that supports his conclusion, omitting from his Report the statistical tests he conducted that contradict Plaintiff's position and show *no significant relationship* between age and termination. His Report and testimony should be excluded on this ground alone. But other flaws also require exclusion. Kuang had little understanding of the data he analyzed, rendering his methodology unreliable. He relied on "descriptive analyses" (Report at 2, § 2(a)) – comparing the average ages of individuals who were terminated and retained without conducting a statistical analysis – which legally amount to no analyses at all. And he applies findings from his cherry-picked subset of data to draw a far broader conclusion – that age is significantly related to termination for the *entire* Resource Action at issue. Aside from the fact that he extrapolated his limited analysis to a broader group that he did not analyze – which is improper – a statistical analysis of the broader data shows that Kuang is wrong. Given these flaws, Plaintiff cannot satisfy his burden to demonstrate that Kuang's analysis is reliable. *See* Fed. R. Evid. 702. Thus, Kuang's Report and testimony must be excluded.

## BACKGROUND

Plaintiff Jonathan Langley alleges he was selected for layoff because of his age, in violation of the federal Age Discrimination in Employment Act and Texas law. Dkt. No. 1. IBM employed Langley as a Sales Lead on its PureApplication Worldwide Sales Team. Langley's team was part of the Cloud Sales – Worldwide Top organization, which in turn was within the

---

[1] A true and correct copy of the Expert Report of Daniel Kuang, Ph.D. ("Report") is attached hereto as Exhibit A to the Declaration of Joanne Bush.

Company's Cloud Worldwide Sales business unit and the larger Hybrid Cloud Group.

Langley's employment with IBM ended in June 2017 as part of a resource action (IBM's term for a reduction-in-force) designated as CLDR. (Kennedy Decl. ¶ 7.) In that resource action, IBM managers made layoff selections based on a comparison of employees within a "job group" of comparable employees, and these job groups form the foundation of the decision-making process. (*Id.* ¶ 4.) The job groups were carefully defined to include similarly-situated employees based on factors such as job duties, geographic location, client served, and product specialty. (*Id.* ¶ 5.) While IBM classifies employees into salary bands (*e.g.*, Band 10), some job groups included employees from two bands where the requisite skills were interchangeable. (*Id.* ¶¶ 6-7.) Using the "Staff Reduction" methodology for selection, meaning the work would continue to be performed but with a reduced headcount, the manager defined three to five key skills for the job group, and evaluated each employee in the job group according to those skills. (*Id.* ¶ 9.) In most cases, this decision-maker was the first line manager of the employees. (*Id.* ¶ 10.)

Plaintiff's statistical expert Daniel Kuang purports to analyze two files with CLDR Resource Action data: (1) IBML-003261, which includes all employees who were considered (selected and not selected) in the CLDR Resource Action; and (2) IBML-001623 (a subset of IBML-003261), which includes all employees in Cloud Worldwide Sales who were considered in the CLDR action. (Report at 1; *see also* White Rep.[2] at 8-9).) In his Report, Kuang broadly concludes that "age is significantly related to termination outcomes at IBM." (Report at 3 (Conclusions).) In support of his conclusion, Kuang conducted a statistical analysis and a "descriptive analysis." In his statistical analysis, Kuang examined only employees in the Band 10

---

[2] A true and correct copy of the Expert Report of Paul White ("White Rep.") is attached hereto as Exhibit A to the Declaration of Paul White.

salary band. (*Id.* at 3, § 2(b).) In his descriptive analysis, Kuang compared, without conducting a statistical analysis, the average ages of individuals (by salary band) who were selected and not selected in the CLDR Resource Action. (*Id.* at 2-3, § 2(a).)

## ARGUMENT

Kuang's Report and testimony should be excluded. "The party proposing an expert's testimony has the burden to prove that the testimony is admissible by a preponderance of the evidence." *Grimes v. Wal-Mart Stores Tex., LLC*, 2012 U.S. Dist. LEXIS 193330, at *5 (W.D. Tex. Jan. 23, 2012). To be admissible, the proposed testimony must be both relevant and reliable. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (citing Fed. R. Evid. 702). To be reliable, the testimony must (a) employ specialized knowledge to assist the trier of fact in understanding the evidence or in determining a fact in issue; (b) be based on sufficient facts or data; (c) be the product of reliable principles and methods; and (d) reliably apply these principles and methods to the facts of the case. Fed. R. Evid. 702. The Court must assess whether the reasoning or methodology underlying the expert's testimony is valid. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). Expert testimony "must be reliable at each and every step or else it is inadmissible." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007).

## I. The Court Should Exclude Kuang's Statistical Analysis Because It Is Unreliable.

Kuang's statistical analysis is fundamentally flawed and is thus unreliable. He cherry-picked the Band 10 CLDR data for statistical analysis because it supported the conclusion he was looking for. Critically, Kuang conceded to omitting from the Report his statistical analyses of *other bands* because the results of Kuang's analysis *contradicted* Plaintiff's position.

### A. Kuang's Report and Testimony are Based on Cherry-Picked Data.

Kuang opines that "[t]erminated employees are statistically significantly older than

retained employees." (Report at 3, § 2(b).) This broad conclusion is based *only* on his finding

that "[i]n Band 10, age is significantly related to termination decisions in [the CLDR data]." (*Id.*)

But Kuang's selective use of data does not satisfy *Daubert*, and his resulting opinion is

inadmissible. *See, e.g.*, *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001)

("Because in formulating his opinion Dr. Hynes cherry-picked the facts he considered to render

an expert opinion, the district court correctly barred his testimony because such a selective use of

facts fails to satisfy the scientific method."); *In re Bextra & Celebrex Mktg. Sales Practices &*

*Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007) (excluding testimony; expert

cherry-picked studies that support his conclusion and ignored evidence contradicting his

conclusion).

Here, Kuang selectively (and improperly) used data that supported his conclusion while

omitting his own analyses that contradicted his conclusion. At deposition, Kuang testified that he

statistically tested whether there was a statistically significant difference between the average

ages of selected and non-selected employees in Bands 7, 8, 9 and 10. (Kuang Dep.[3] 62:11-23.)

But his Report presents only his analysis of Band 10. The omission is disingenuous: he found

"there was no statistically significant relationship between age and termination" for employees in

Bands 7, 8 or 9 (*id.* 62:11-23; 220:22-25), meaning Kuang omitted the analyses that conflict with

his conclusion.

Kuang's incomplete analyses and presentation do not end there. Kuang calculated the

average ages of all selected and non-selected employees encompassed within the CLDR

Resource Action (without regard to salary band), but he did not test whether the differences were

---

[3] Relevant excerpts from the Deposition of Daniel Kuang, Ph.D. are attached hereto as Exhibit B to the Declaration of Joanne Bush.

statistically significant. (*Id*. at 57:19-58:19.) Had he conducted the requisite statistical analysis, he would have found there is *no* statistically significant difference in the average ages of employees who were and who were not selected for layoff across the CLDR Resource Action. (White Rep. at 12.) All told, Kuang's selective analysis tells a misleading story. The methodology is not reliable, and his testimony should be excluded. *See Konnick v. Exxon Mobile Corp.*, 2016 WL 439361, at *13 (E.D. La. Feb. 4, 2016) (excluding expert testimony that "cite[d] [ ] studies selectively, highlighting only data that supports his position in a way that undermines the reliability of his methodology.").

For his part, Kuang's *post hoc* attempts to justify his methodological errors all fall short. At deposition, Kuang attempted to rationalize his selective use of Band 10 data by arguing that IBM's CLDR data is unreliable. (Kuang Dep. 52:17-24, 62:14-63:11, 81:18-83:2, 172:18-173:13.) In Kuang's view, the average age of employees in the CLDR data is not consistent with the average age of IBM's overall workforce. (*Id*. at 52:17-24.) But Kuang's conjecture does not render the data unreliable. Kuang points to nothing to indicate that IBM's CLDR data is, in any way, unreliable. And, at his deposition, Kuang agreed that it could be perfectly reasonable for the average age of employees in one part of a company to be different than the average age for the entire organization. (*Id*. at 128:3-9.) Indeed, as to the CLDR population, given the work experience required for the positions at issue, it is no surprise if the ages of employees who were considered are not representative of the age distribution of the entire company worldwide.[4] (*See,*

---

[4] To further support his assertion that IBM's data is unreliable, Kuang points (Report at 2, § 1(a)) to a report of the median age of IBM's workforce that he found through a Google search. Even if the information Kuang found in his internet research is accurate, it does nothing to render IBM's CLDR data inaccurate or unreliable. Regardless, Kuang's online data is suspect. It is derived from a survey on the website Payscale.com, which aggregates pay data in the tech sector. This was not a scientific survey. The participants are tech sector employees who want access to the pay data collected by Payscale.com. (Kuang Dep. 149:13-150:5.) There is no indication that

*e.g.*, Cowley Dep. 61:1-22 (head of the Worldwide Sales unit testifying that "[i]t's not really conceivable that you would take somebody who's inexperienced into the worldwide team").).)[5]

In any event, Kuang's claims regarding the reliability of IBM's data are hypocritical: he asserts that the CLDR data as a whole is *unreliable* while, at the same time, asserting that he *could* reach a *reliable* conclusion based on a portion of that purportedly *unreliable* data. *See Spring St. Apts Waco, LLC v. Phila. Indem. Ins. Co.*, 2017 U.S. Dist. LEXIS 99890, at *15-16 (W.D. Tex. June 28, 2017) ("If the foundational data underlying opinion testimony is unreliable, an expert will not be permitted to base an opinion on that data because any opinion from that data is likewise unreliable."). Kuang cannot have it both ways; if he thinks the CLDR data is unreliable, then his Band 10 analysis is unreliable. If his Band 10 analysis is based on reliable data, then he cannot justify excluding the rest of the CLDR data on that basis.

Kuang's other *post hoc* rationalizations for why his statistical tests for Bands 7, 8, and 9 are not valid – while his test for Band 10 is acceptable – are also illogical. For instance, at deposition, he explained that he looked at the standard error of the data within each of Bands 7, 8, 9, and 10 because that "provides reasonable assurance that the results are reliable." (Kuang Dep. 84:4-86:11.) According to Kuang, the standard errors for Bands 7, 8, and 9 were too high for his statistical tests to be valid, but for Band 10 it was "low enough." (*Id*. at 83:3-13; 94:17-22.) But the standard error for Band 10 is actually *higher* than the standard error for Band 9 in both CLDR datasets. (White Dec. ¶ 6.) Thus, if Kuang believes Band 9's standard error is so

---

everyone at IBM was given the opportunity to participate. (White Report at 11.) As such, the median age that Kuang cites to suffers from self-selection bias. (*Id.*) And Payscale.com does not provide information on how many IBM employees responded to the survey, what positions they held, or the country in which they worked. (*Id.*)

[5] Relevant excerpts from the deposition of Steven Cowley are attached hereto as Exhibit C to the Declaration of Joanne Bush.

high that his statistical test was invalid, then his analysis of Band 10 is invalid as well.

Kuang also pointed to so-called "outliers" in the data as a basis to justify his selective use of Band 10 and his exclusion of Bands 7, 8, and 9. (Kuang Dep. 90:9-91:22.) But what he terms "outliers" in Bands 7, 8, and 9 were actually *younger employees* who were selected for layoff in the CLDR Resource Action. That is, Kuang conceded to bolstering his analysis by omitting data that contradicted Plaintiff's theory of the case. (Kuang Dep. 91:15-22 (these "outliers" "add mud to the water. **Q:** Because . . . it undermines the conclusion that there's a relation between age and termination? **A:** Yes.").) This does nothing more than confirm the severe flaws in Kuang's analyses.

Kuang's use of cherry-picked Band 10 data does not satisfy the required standards for admissibility and thus his statistical analysis must be excluded.

**B.    Kuang Based His Report on Data He Did Not Understand.**

Kuang's statistical analysis should be excluded as unreliable for another reason: Kuang did not understand the data that he relied upon in reaching his conclusions. *See Myers v. Ill. Cent. Railroad Co.*, 629 F.3d 639, 641 (7th Cir. 2010) (affirming exclusion of expert testimony; "experts did not have an adequate understanding of [plaintiff's] medical history or his work with the Railroad to give an opinion about what caused his injuries"); *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 133-34 (M.D. Pa. 2015) (excluding expert testimony; "reliance on the pro forma numbers is also inaccurate because Plaintiffs' experts did not understand the internal purposes for which Defendant created that document").

Kuang conceded that, at the time he prepared his Report, he did not understand the various categories of data – such as job group and salary band – within the CLDR dataset. (Kuang Dep. 117:2-12; 119:21-120:9.) Because he did not understand the data, Kuang could not reliably decide which fields of data to focus on – and which to ignore – in his analysis. *Knight*,

482 F.3d at 355 ("The [Fed. R. Ev. 702] reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*.").

As a case in point, Kuang's methodology focused solely on Band 10 employees, while disregarding entirely the concept of job group. But job group is the foundational grouping by which IBM managers compare and select employees for separation in resource actions. (*Supra* 2.) And Kuang did not understand that at all. (Kuang Dep. 117:2-118:1 ("[o]ther than seeing job group names in some of the action worksheets," Kuang did not know what a job group was); 164:21-165:1 ("As of [the date of the Report], I didn't have a very firm understanding of" job group).)[6] And Kuang effectively conceded that his lack of understanding of the job group concept rendered his analysis unreliable. (*Id*. 249:21-250:8 ("[I]f I knew that 'job group' was such an important unit of analysis, I would definitely drill down on that more . . . [a]nd I would include my evaluation, a more in-depth coverage of my evaluation of the validity of the job groups. I would include that.").)

Kuang's lack of understanding of the data does not end there. He conceded that he did not understand other key categories of data, including band and manager. (Kuang Dep. 165:13-15 ("'Band' is another one. Rather than having to hunch or make a hunch of what it is, it certainly would have been helpful" to have a definition of band."); *see also* 120:6-9 ("Do I know the specifics of what a band is or the fact that it could be a job pay band – or any of those details at that level of detail? No, I do not."); 165:9-11 ("'Manager,' you asked me about that. I didn't have a firm understanding of managers and the relationship with employee records.").) And

---

[6] Moreover, Kuang did not understand what a job group was notwithstanding the fact that he had a meeting with counsel for Plaintiff where counsel explained the data to him. (Kuang Dep. at 117:2-118:1.)

Kuang's lack of understanding of the data renders his approach of focusing exclusively on a single band, while failing to account for job groups and the roles of managers in making those job groups (*supra* 2), unreliable. Simply put, because Kuang did understand the data, his analysis of the data and resulting opinions are not reliable and should be excluded.

## II. The Court Should Exclude Kuang's "Descriptive Analysis" Because It Does Not Test for Statistical Significance.

Statistical expert testimony is inadmissible where, as here, an expert presents findings that do not include an analysis of whether there is a statistically significant relationship. In *Thomas v. Deloitte Consulting LP*, 2004 U.S. Dist. LEXIS 17761, at *8-9 (N.D. Tex. Sept. 2, 2004), the plaintiff presented a statistical expert's report purporting to show that a disproportionate number of female and older managers were terminated as part of a reduction in force. But the court excluded the testimony because the expert had failed to test for statistical significance in many of her analyses. *Id*. at *13. The court warned that "not all disparities are probative of discrimination" and explained that "[b]efore a deviation from a predicted outcome can be considered probative, the deviation must be statistically significant." *Id*. at *11 (internal quotations omitted). Finding the expert's "statistics [were] little more than a list of numbers that [were] not probative of discrimination or helpful to a jury in determining disparate treatment," the court excluded the portions of the report that failed to test for statistical significance because it "must be excluded under *Daubert*." *Id.* at *13; *see also Good v. Fluor Daniel Corp*., 222 F. Supp. 2d 1236, 1243 (E.D. Wash. 2002) (excluding expert testimony that did not account for statistical significance).

Kuang's "descriptive analysis" should likewise be excluded because it does not test for statistical significance. Kuang opines that his "descriptive analysis" of the CLDR data "suggest[s] that terminated employees were older than those who were retained by IBM across

all Bands at IBM." (Report at 2, § 2(a).) In support of this opinion, he lists the average ages of employees selected and not selected in the CLDR Resource Action, broken down by Band (4-10). (*Id*. at 3, § 2(a), Table 2).) However, Kuang readily admits that this basic side-by-side comparison of average ages is not "an inferential statistical test." (Kuang Dep. 219:16-23.) Accordingly, Kuang's proffered "descriptive analysis" of these Bands should be excluded, as it is "little more than a list of numbers." *See Deloitte*, 2004 U.S. Dist. LEXIS 17761 at *13.

### III. The Court Should Exclude Kuang's Opinion Regarding The CLDR Resource Action Because It Is Unreliable.

Kuang's ultimate opinion that "age is significantly related to termination outcomes at IBM" (Report at 3 (Conclusions)), which he contends applies to the entire CLDR Resource Action, should be excluded. *See* Fed. R. Evid. 702. Although Kuang draws a broad conclusion as to the entire CLDR Resource Action population, his conclusion is unsupported because *he did not statistically test the entire CLDR population*. And statistical testing of the entire CLDR Resource Action actually shows there is *no* statistically significant difference in the average ages of employees who were selected and not selected. (White Rep. at 12-13.) Thus, there is no basis for Kuang's broad opinion, and it should be excluded as unreliable. *See* Fed. R. Evid. 702.

### CONCLUSION

For the foregoing reasons, the Report and testimony of Daniel Kuang should be excluded in their entirety.

Dated:    July 2, 2019

Respectfully submitted,

*/s/ Joanne R. Bush*
Alison B. Marshall*
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Phone: (202) 879-7611
Fax: (202) 626-1700
abmarshall@jonesday.com
**Admitted Pro Hac Vice*

Matthew W. Lampe*
JONES DAY
250 Vesey Street
New York, NY 10281
Phone: (212) 326-7838
Fax: (212) 755-7306
mwlampe@jonesday.com
**Admitted Pro Hac Vice*

Brian M. Jorgensen
(Texas Bar No. 24012930)
JONES DAY
2727 North Harwood Street
Dallas, Texas 75204
Phone: (214) 969-3741
Fax: (214) 969-5100
bmjorgensen@jonesday.com

Joanne R. Bush
(Texas Bar No. 24064983)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Phone: (832) 239-3782
Fax: (832) 239-3600
jrbush@jonesday.com

*Attorneys for Defendant*
*International Business Machines Corporation*

**CERTIFICATE OF CONFERENCE**

Counsel for Defendant IBM has complied with the Court's meet and confer requirement under Local Court Rule CV-7(i).  On July 1, 2019, IBM's counsel conferred in person with Langley's counsel regarding IBM's intention to file a motion to exclude the report and testimony of Daniel Kuang.  Langley's counsel indicated that she opposed IBM's Motion.

/s/ *Joanne R. Bush*
Joanne R. Bush

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2019, true and correct copies of the foregoing were served

via ECF on the Court and all counsel of record.

/s/ *Joanne R. Bush*
Joanne R. Bush