# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| JONATHAN LANGLEY | § | |
| | § | |
| VS. | § | NO. A-18-CV-443-LY |
| | § | |
| INTERNATIONAL BUSINESS | § | |
| MACHINES CORPORATION | § | |

## ORDER

Before the Court is Plaintiff Langley's Motion to Compel Requests for Production and Depositions and for Leave to Exceed Ten Depositions and to Extend the Discovery Period (Dkt. No. 86); IBM's Response (Dkt. No. 96); Langley's Reply (Dkt. No. 108); and IBM's Sur-reply (Dkt. No. 181). The Court held a hearing on the motion on September 4, 2019.

## I. Background

This is an age discrimination case. Jonathan Langley was a 24-year employee of IBM who was terminated in 2017 as part of a reduction in force. He was employed in IBM's Hybrid Cloud Group. Langley alleges that IBM terminated him because of his age in violation of the ADEA, and that this conduct was willful. Langley asserts he was laid off because of IBM's decision to focus on hiring younger workers, and to lay off older workers through a number of "reductions in force" to make room for the new hires. He claims that IBM applied subjective RIF criteria to screen out older workers, and that he was terminated as a result of these decisions.

Langley moves to compel discovery of executive level communications and documents which he maintains show a company-wide strategy to lower the age of IBM's workforce.[1] In addition, Langley requests permission to take apex-level depositions of IBM's CFO James Kavanaugh, former CFO Martin Schroeter, and CEO Ginni Rometty. With regard to the document

---

[1] The specific requests at issue are Plaintiff's First Request for Production Nos. 24-27 and Plaintiff's Fourth Request for Production Nos. 149-154, and 156.

requests, Langley states that IBM has refused to produce documents unless they relate specifically to Langley and the "CLDR" resource action, which is the identifier that IBM's human resources department gave the reduction in force that included Langley. Langley maintains that CLDR is a fictional entity, and was created by IBM's resource action specialists to group IBM workers in such a way as to make the layoffs appear less obviously age-based than they were. He thus contends that document discovery should not be limited as IBM contends, and urges the Court to order IBM to produce documents based on the parameters contained in the subject RFPs. Langley further contends that he is entitled to take the depositions of the three executives based on public statements made by them indicating what he contends is an age-based bias, and to determine if they participated in the decisionmaking leading to the layoffs. Because taking these depositions would exceed the maximum of ten allowed by the Federal Rules, and because they involve high level executives, Langley seeks permission from the Court to take the depositions, and a 90-day extension of the discovery period to conduct the depositions.

IBM opposes all of these requests. It argues it has turned over all responsive and relevant documents in compliance with this Court's prior orders, and has made the leadership of the Hybrid Cloud Group available for depositions. IBM notes that Langley has either declined to depose these individuals or, for those he did depose, he failed to question them about the same matters he now seeks to inquire about at the apex depositions. IBM states that its high level executives have no personal knowledge of, nor did they have any personal involvement in, Langley's termination or the CLDR action that led to Langley's termination. IBM maintains that the decision to conduct the CLDR resource action was a decision made solely by the Hybrid Cloud Group's management, and the executives Langley wishes to depose and obtain documents from played no part in that decision.

## II. Relevant Standard

Under Rule 34, a party may request that any other party produce any designated documents or electronically stored information in the responding party's possession, custody, or control. FED. R. CIV. P. 34(a)(1)(B). If a party fails to produce documents requested under Rule 34, the requesting party may move under Rule 37 for an order compelling production. FED. R. CIV. P. 37(a)(3)(B)(iv). A party that opposes the Rule 34 request must "state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(a)(2)(B); *Walters v. Sentry Link, LLC*, 2018 WL 837611, at *3 (W.D. Tex. Feb. 9, 2018) ("The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable.") (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). Rule 26(b)(1) sets out the scope of permissible discovery, stating that:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). If the Court determines that proposed discovery is outside this scope, the Court "must limit the frequency or extent of discovery otherwise allowed by these rules[.]" FED. R. CIV. P. 26(b)(2)(C)(iii). "Trial courts are afforded substantial discretion in determining whether to grant or deny a motion to compel discovery." *Escamilla v. United States*, No. 14-246, 2015 WL 12732889, at *2 (W.D. Tex. Apr. 13, 2015).

## III. Analysis

This is the third instance in which the Court has been forced to address the proper scope of discovery for this case. Because IBM took the initial position that Langley was only entitled to

discovery that pertained to his four-person team, early in the case the Court granted Langley's motion to compel, and took an initial stab at identifying how broad the discovery in the case should be. Dkt. No. 52. Admitting that its "understanding of IBM's structure is rudimentary at this stage of the case, and is based primarily on the information provided by IBM's counsel at the hearing," the Court's conclusion then was

> that discovery at the level of the Hybrid Cloud Group is reasonably likely to lead to the discovery of admissible evidence. Accordingly, the Court will direct IBM to produce documents from within that group responsive to Langley's requests for production. Further . . . at this time the Court will limit discovery to the "resource action" of which Langley's termination was a part.

*Id.* at 3-4. The Court added "an important caveat:"

> The fact that IBM has chopped itself into bits and pieces for organizational purposes does not mean that discovery must remain similarly organized. The scope of discovery set by Rule 26 is not constrained by artificial borders created within a corporation. What matters is not whether any responsive document comes from the records of any particular division but whether it is relevant to a claim or defense in the case, and whether the discovery is proportionate to the needs of the case. Thus, while the Court is using IBM's structure at this point as a rough proxy for what it views to be an appropriate limit on IBM's search for responsive documents, the parties should not take this as an absolute prohibition on requesting discovery of items that might be outside of the Hybrid Cloud Group. As discovery progresses, information may be learned that justifies going outside the organization for targeted inquiries.

*Id.*

IBM quickly pushed back, filing a Motion for Clarification asking the Court to more narrowly circumscribe the breadth of the discovery, and suggesting that the Court had misunderstood the structure of the company. The Court summarily denied the motion, stating that it understood well what was presented to it. It added yet another admonition:

> Finally, the Court reminds IBM of the "caveat" the Court added at the end of its order on the motion to compel, and suggests that IBM re-read that paragraph and take it to heart. IBM's internal structure is a creation of IBM. It is only one of many factors the Court will consider in determining the scope of discovery. And because the structure

4

is a creation of IBM, the Court will look with a jaundiced eye at arguments suggesting that discovery must somehow align with—and more importantly, be limited by—that structure.

Dkt. No. 75 at 2.

It is thus with a great deal of frustration that the Court is presented with yet another argument that discovery should be cabined based on an arbitrary boundary IBM created. This time it is something termed "CLDR." As noted, in its initial attempt to define the scope of discovery, the Court required that IBM produce documents from the Hybrid Cloud Group related to "the 'resource action' of which Langley's termination was a part." Dkt. No. 52 at 3. At that time, there had been no dispute about what the relevant "resource action" was, and the Court assumed—quite wrongly—that there could be no dispute about that, because at that time the Court understood that the reduction in force had been company wide. As it turns out, nothing is this straightforward with IBM.

Rather than describe this itself, the Court will quote from IBM's declarant on this point, the "Resource Manager" in the "Project Office" that—as best the Court can tell—administered all of IBM's layoffs in the United States:

> Once the funding for a resource action is authorized, the Project Office works with the various business units participating in the action to administer the action. My team assigns each resource action a four-letter acronym that we use to define the action and track its execution. Thus, the acronym that we assign is based on the business unit that is undertaking the resource action.
>
> We assigned the CLDR acronym to the first quarter 2017 resource action in the Hybrid Cloud group *that affected the former Cloud group.* We made this assignment in February of 2017.
>
> Mr. Cowley's Cloud Worldwide Sales unit [under which Langley's team was organized] is one of the former Cloud group units that reduced headcount in the CLDR resource action. Not all units within the former Cloud group reduced headcount in the CLDR resource action.

5

Dkt. No. 96-4 at 2 (emphasis added). Complicating matters further, the Hybrid Cloud Group was created only shortly before the layoffs that impacted Langley. As explained by the former head of the Hybrid Cloud Group, that entity "was formed as a separate business group in early 2017. The Cloud group . . . and the Analytics group . . . were combined to form the Hybrid Cloud group. Some of the sub-units that had been within the Cloud group moved to the Watson and Cloud Platforms group." Dkt. No. 96-5 at 2. But this took place *before* the February 2017 layoffs, so that at the time he was laid off, Langley worked in the Hybrid Cloud Group. Regardless, combining the just-quoted statements from the IBM witnesses, and focusing particularly on the italicized statement, it appears that the employees grouped in CLDR were only the employees who had been in the then-defunct Cloud group that were considered for the layoff that included Langley, and did not include other employees in the Hybrid Cloud Group who were potentially within the scope of the Hybrid Cloud layoffs in 2017. And that is only one discrepancy. Langley has noted here and in his summary judgment briefing that the CLDR employee group does not align with other IBM employee lists that purport to identify employees from the same groups that allegedly comprised the CLDR. All of which is to say that IBM's insistence that it need only produce documents related to the CLDR resource action is highly suspect.[2]

Thus, the Court rejects the notion that the production of documents should be limited to those relating to the CLDR layoff. IBM has been given many opportunities to provide a reasonable means by which to define the universe of relevance for this case, and has failed each time. The Court will therefore adopt the word search method proposed by Langley in the RFPs at issue here. The Court also rejects IBM's argument that document production from its executives is not warranted. IBM

---

[2] As noted at the end of the recent hearing, it is particularly vexing that *none* of this information was presented to the Court in January, when IBM was asking that the Court limit discovery based on IBM's structure and the layoff that Langley was part of.

is correct that requiring production of records from senior executives is appropriate only where there is "a sufficient showing that this information is necessary and not cumulative of other materials." *Harris v. Union Pac. R.R. Co.*, 2018 WL 2729131, at *4 (D. Neb. June 6, 2018). Further, while it is sometimes appropriate for the producing party "to select the custodians most likely to possess responsive information," the requesting party is entitled to insist on others if it "establishes the relevance of the documents it seeks from those custodians." *See Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank*, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017). Langley has done so here. The numerous public statements by IBM's CEO that can easily be read to suggest that IBM needed to replace older workers with Millenials, combined with other public statements suggesting that in the past five years IBM has replaced half of its 350,000 person workforce with young employees, is more than enough to meet this burden. Accordingly, the Court **GRANTS** Langley's Motion to Compel Requests for Production, and **ORDERS** IBM to respond to RFPs Nos. 24-27, 149-154, and 156, within twenty days of the date of this Order, or another date acceptable to all parties.

The situation is different with regard to the apex depositions. "Federal courts permit the depositions of high-level executives, sometimes referred to as apex executives, when conduct and knowledge at the highest levels of the corporation are relevant to the case." *Gaedeke Holdings VII, Ltd. v. Mills*, No. 2015 WL 3539658, at *3 (N.D. Tex. June 5, 2015). A district court has authority to prevent or alter apex depositions under the Federal Rules to avoid duplication, harassment, and burdensomeness." *Schmidt v. Goodyear Tire & Rubber Co.*, 2003 WL 27375845 (E.D. Tex. Jan. 13, 2003). "One long-established factor considered by courts in determining whether an apex deposition should be taken is whether the individual has unique personal knowledge of the matter in the case." *Id.* As noted at the hearing, the Court does not believe Langley has met his burden in demonstrating an entitlement to these depositions. Not only does it not yet appear that the CEO, CFO or former

CFO have "unique" information relevant to his claims, it also appears that Langley can obtain the same information these witnesses may have from other sources. The Court will therefore **DENY** Langley's motion to the extent it seeks permission to take these three depositions.

Finally, Langley requests an extension of the discovery deadline. It appears that the primary purpose of that request was to permit the apex depositions that the Court has declined to allow. The request may therefore be moot. To the extent it is not, the Court notes the following. An extension of the discovery deadline is analyzed under the good cause standard of FED. R. CIV. P. 16(b)(4), which directs the court to consider: (1) the explanation for not meeting the deadline; (2) the importance of the discovery; (3) the potential prejudice in allowing the extension and (4) the availability of a continuance to cure such prejudice." *S & W Enters., L.L.C. v. South Trust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003). "The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order." *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009). As is clear from the above, Langley has been diligent in attempting to obtain the document discovery, and has been thwarted by IBM's too-narrow view of what is relevant to this case, and refusal to produce records. Thus, to the extent an extension of the discovery deadline is required to complete the discovery permitted herein, it is **GRANTED**.

## IV. Order

For the reasons stated, Langley's Motion to Compel Requests for Production and Depositions and for Leave to Exceed Ten Depositions and to Extend the Discovery Period (Dkt. No. 86) is **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** as to the requests for production, and IBM is **ORDERED** to respond to RFPs Nos. 24-27, 149-154, and 156, within twenty days of the date of this Order, or another date acceptable to all parties. The motion is **DENIED** to the extent it seeks permission to take the apex depositions, and to exceed 10

depositions. Finally, the motion is **GRANTED** with regard to the extension of the discovery deadline, and the deadline is hereby **EXTENDED** for the time period required to complete the discovery permitted herein.

SIGNED this 20th day of September, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE