IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JONATHAN LANGLEY | § |
| | § |
| VS. | §     NO. A-18-CV-443-DAE |
| | § |
| INTERNATIONAL BUSINESS | § |
| MACHINES CORPORATION | § |

### ORDER

Before the Court are Defendant IBM's Motion to Exclude Expert Report and Testimony of Daniel Kuang (Dkt. No. 93); IBM's Motion to Strike Supplemental Expert Report of Daniel Kuang (Dkt. No. 140); Plaintiff's Responses (Dkt. Nos. 138 & 163); and IBM's Replies (Dkt. Nos. 142 & 170). The District Court referred the motions to the undersigned for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

### I. BACKGROUND

Jonathan Langley, the Plaintiff in this case, has designated Daniel Kuang to testify as an expert to offer statistical testimony in support of Langley's age discrimination claim against IBM. Dr. Kuang has a Ph.D. in Industrial and Organization Psychology from Portland State University, with an emphasis in statistical and data analytics. In his professional career, Dr. Kuang has 18 years of experience working as a statistical consultant on equal employment related matters, including creating and analyzing reduction in force actions for large corporations. As it pertains to this case, Dr. Kuang generally opines that "age is significantly related to termination outcomes at IBM." *See* Dkt. No. 94-2.

The original expert disclosure deadlines set by the scheduling order for this case were February 25, 2019, for Langley, and March 25, 2019, for IBM. Dkt. No. 26 at ¶ 2. Rebuttal reports

were due 14 days after receipt of the report of the opposing expert. The parties extended these deadlines by agreement to May 21, 2019, for Langley, and June 11, 2019, for IBM. Dkt. No. 140-2. Dr. Kuang's original report was brief—three pages—and was filed on the May 21, 2019 deadline. In the first of the two motions before the Court, IBM moves to exclude that report as well as Dr. Kuang's associated testimony. IBM contends Dr. Kuang's opinions are unreliable, and he used cherry-picked data that he did not understand. On July 23, 2019, Langley responded to the motion to strike Dr. Kuang's initial report, and attached to that response a second, much longer (29 pages) "supplemental report" for Dr. Kuang, dated July 12, 2019, which addresses many topics not addressed in the original report. In its second motion regarding Dr. Kuang, IBM seeks to strike the supplemental report as untimely.

## II. STANDARD

The Supreme Court acknowledged in *Daubert v. Merrell Dow Pharmaceuticals* that Federal Rule of Evidence 702 is the proper standard for determining the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597-98 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under *Daubert*, a trial court acts as a "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue."

*Daubert*, 509 U.S. at 592-93; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147. Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not admit testimony that is based purely on the unsupported assertions of the expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

In addition to being qualified, an expert's methodology for developing the basis of her opinion must be reliable. *Daubert*, 509 U.S. at 592-93; *Moore*, 151 F.3d at 276. "The expert's assurances that he [or she] has utilized generally accepted scientific methodology is insufficient." *Moore*, 151 F.3d at 276. Even if the expert is qualified and the basis of his or her opinion is reliable, the underlying methodology must have also been correctly applied to the case's particular facts in order for the expert's testimony to be relevant. *Daubert*, 509 U.S. at 593*; Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). The party proffering expert testimony has the burden of establishing that the challenged testimony is admissible. FED. R. EVID. 104(A). The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276.

### III. ANALYSIS

#### A.     The Supplemental Report

As noted in the background section, after timely serving IBM with Dr. Kuang's initial report, Langley served IBM with a supplemental report on July 12, 2019. The supplemental report contains

new material intended to rebut the statistical analysis of IBM's export, responds to the criticisms IBM raised in its motion to exclude the initial report, and contains supplemental analyses not contained in the first report. IBM argues that the supplemental report is untimely and should be stricken.[1] Langley responds with three arguments: (1) he "was not only entitled to submit his expert's Supplemental Report [when he did], he was required to do so" by FED. R. CIV. P. 26(e); (2) the report is a proper rebuttal report, as it primarily responds to IBM's expert; and (3) IBM has not been prejudiced because the supplemental report primarily addresses IBM's expert report, and IBM had Dr. Kuang's notes regarding his opinions about IBM's expert at his deposition, and questioned Dr. Kuang "at length about those notes and his opinions." Dkt. No. 163 at 1-2.

Langley's first two arguments do not have merit. Rule 26(e) requires parties to supplement or correct previous discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect. . . ." FED. R. CIV. P. 26(e)(1). With respect to an expert whose report must be disclosed under Rule 26(a)(2)(B), "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." FED. R. CIV. P. 26(e)(2). Nothing in these rules, however, allows a party to submit entirely new expert opinions after deadlines set by the trial court. Indeed, if Langley's interpretation of Rule 26(e) were correct, expert report deadlines would be meaningless. Langley's reliance on Judge Pitman's order in *Crankshaw v. City of Elgin* is likewise misplaced. That decision relates to a run-of-the-mill *Daubert* challenge, and only in a short discussion at the very end does it address an objection to what is referred to as an "addendum" to the expert's report. *Crankshaw v.*

---

[1] The deadline for Langley to serve initial export reports was May 21, 2019, and the deadline for rebuttal reports was 14 days after service of the opposing expert report, or June 25, 2019, for Langley. The supplemental report was not served until July 12, 2019.

*City of Elgin*, No. 1:18-cv-0075 (W.D. Tex. May 8, 2019), Dkt. No. 53. Judge Pitman plainly viewed the addendum as a pretrial discovery supplement required by Rule 26, and analyzed it accordingly. There is no discussion of the nature of the addendum, and the opinion does not suggest it contained substantial new opinions or material. On the other hand, when courts have been faced with circumstances like those here, they have held that Rule 26(e) does not allow a party to fail to meet its initial Rule 26(a)(2)(B)(i) obligation to serve a "complete statement of all opinions." Thus, the Fifth Circuit has noted that "the purpose of rebuttal and supplementary disclosures is just that—to rebut and to supplement. These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996).

For similar reasons, Langley's argument that Dr. Kuang's second report was a "rebuttal" report allowed by the rules also fails. As noted, the deadline for serving rebuttal reports was 14 days after receipt of the opposing expert report. Here, that deadline was June 25, 2019. Yet Langley did not serve IBM with Dr. Kuang's supplemental report until July 12, 2019. Even characterizing the report as a rebuttal report, the report was nearly three weeks late.[2]

Which brings us to Langley's third argument—IBM is not prejudiced by the late disclosure of Dr. Kuang's supplemental opinions. This argument focuses on one of the four criteria courts consider in deciding whether to permit late disclosed evidence. Those criteria derive from Federal Rule of Civil Procedure 37. Rule 37(c) allows evidence that was not properly or timely disclosed to be excluded:

---

[2]IBM's argument that Langley was effectively trying to submit a prohibited "sur-rebuttal" report is off base. When a scheduling order includes a deadline for "rebuttal reports," as the schedule here did, it expressly contemplates that the plaintiff's expert may submit a report rebutting any opinions or criticism contained in the defendant's expert report. *See, e.g. UMG Recordings, Inc. v. Grande Commun. Networks, Inc.*, 2019 WL 3207802 at *1-2 (W.D. Tex. July 16, 2019).

> [a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.

FED. R. CIV. P. 37(c). In determining the propriety of the exclusion of evidence under Rule 37(c)(1), the Court considers four factors: (1) the party's explanation for its failure to disclose evidence; (2) the prejudice, if any, to the party opposing the admission of the evidence; (3) the possibility of curing any prejudice with a continuance; and (4) the importance of the evidence. *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996).

Langley points out that IBM took Dr. Kuang's deposition on June 18, 2019, only one week after Langley received IBM's expert report, which was 82 pages long. Though Dr. Kuang testified that he had not at that time thoroughly reviewed Dr. White's report, he did bring his notes of his thoughts on Dr. White's report with him to the deposition, and IBM was given a copy of those notes. He also stated during the deposition that he intended to prepare a report responding to Dr. White's criticisms. IBM clearly reviewed the notes, as it questioned Dr. Kuang in some detail regarding the criticisms contained in those notes. *See* Dkt. No. 163-3. Given this, IBM's protestations of prejudice are overstated. Moreover, to the extent the supplemental report is responsive to Dr. White's report, though it was late, it was delivered less than three weeks after the deadline for rebuttal reports. Thus, if IBM was prejudiced by Langley's failure to timely serve Dr. Kuang's report, that prejudice is curable by permitting a second deposition of Dr. Kuang, and allowing Dr. White to supplement his report accordingly. Though there may not have been sufficient time for this when the motion to strike was first filed, the recent transfer of this case to Judge Ezra has led to the cancellation of the trial date, which means there is more than sufficient time for a second deposition to take place.

The other prejudice that IBM articulates it will suffer from allowing the supplemental report relates to the timing of the report vis-a-vis the deadline for filing summary judgment motions. As it points out, IBM's deadline for filing its summary judgment motion was Monday, July 15, 2019. It did not receive Dr. Kuang's supplemental report until the Thursday before this, on July 11, 2019. As a result, IBM had no opportunity to consider, or attempt to rebut, the new report when it sought summary judgment. Further, in his response Langley expressly relied on the supplemental report in arguing that summary judgment was not warranted. If IBM is entitled to summary judgment in this case had Dr. Kuang's report not been considered, then it plainly appears IBM will have suffered prejudice from the late disclosure of the report. For two reasons, however, this potential prejudice does not merit granting the motion to strike. First, in considering IBM's motion for summary judgment—on which the undersigned has submitted a Report and Recommendation simultaneously with this order—the undersigned did not consider Dr. Kuang's opinions. As noted in that Report and Recommendation, even without considering either of Dr. Kuang's reports, IBM is not entitled to summary judgment in this case. Second, there was a less draconian option available to IBM to avoid any prejudice surrounding its summary judgment motion—it could have sought an extension of the deadline for filing that motion based on the late-served report. It chose not to do so, and instead sought only to have the Court strike the report.[3]

---

[3]Another factor at play here is the confusion created by the manner in which IBM has identified the layoff that led to Langley's termination. The Court has written in some detail regarding how even within IBM it was not entirely clear what the boundaries of that layoff were. *See* Dkt. No. 185. The Court remains unsure even today of what the appropriate boundaries of that layoff should be, and whether confining the analysis—as IBM suggests—to only the "CLDR" is justified. Much of Dr. Kuang's supplemental report addresses criticisms lodged by IBM about errors Dr. Kuang allegedly made in analyzing the "CLDR" layoff data. Given how difficult it has been to gather information about and understand the CLDR data, IBM is itself at least partially responsible for Dr. Kuang's need to supplement his report, and explain the manner in which he interpreted what is confusing, if not impenetrable, data.

Given the above, and having considered all the four factors of *Barrett* case, the appropriate remedy to the late disclosure of Dr. Kuang's report is to allow IBM to depose Dr. Kuang regarding his supplemental report, and to allow Dr. White to supplement his report if he so desires. Accordingly, IBM's Motion to Strike Supplemental Expert Report of Daniel Kuang (Dkt. No. 140) is **DENIED**.[4]

### B. The Initial Report

As mentioned, IBM also moved to exclude Dr. Kuang's initial expert report and testimony, contending it is unreliable. IBM levels a number of criticisms regarding the manner in which Dr. Kuang analyzed IBM's data for the "CLDR" layoff. The Court need not detail these criticisms here, for two reasons. First, none of the criticisms rise even close to demonstrating that Dr. Kuang's testimony is sufficiently unreliable to merit its exclusion. Everything IBM complains of is something it can easily address at trial with cross examination. Under well-established case law, the types of questions IBM raises about Dr. Kuang's testimony "affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). As the Supreme Court explained in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of addressing the type of testimony at issue here. *Daubert*, 509 U.S. at 596.

---

[4]IBM separately moved to strike Section III of Dr. Kuang's supplemental report because it contains improper legal conclusions. The Court has reviewed Section III of the supplemental report and finds that the information in that section relates to his analysis and explanation of the CLDR data, and does not constitute legal conclusions or argument.

Second, many of the criticisms of Dr. Kuang's testimony IBM initially raised have now been addressed in his supplemental report. As he explains in that report, many of IBM's complaints misunderstood Dr. Kuang's testimony, and several others were the result of problems with the data IBM produced regarding the layoff at issue. Regardless, as just noted, the issues raised are more appropriately handled through cross examination, and do not justify excluding the testimony. "The trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land More or Less Situated in Leflore County, MI*, 80 F.3d 1074, 1078 (5th Cir. 1996).

## VI.  CONCLUSION

IBM's Motion to Exclude Expert Report and Testimony of Daniel Kuang (Dkt. No. 93) is **DENIED**, but IBM may take an additional deposition of Dr. Kuang of no more than 4 hours, regarding the matters addressed in his supplemental report. That deposition shall take place **no later than March 13, 2020**. IBM's expert may also serve a rebuttal report (consistent with the requirements of FED. R. CIV. P. 26(a)(2)(B)) regarding the matters addressed in Dr. Kuang's supplemental report, which it must serve on Langley **no later than March 30, 2020.**

SIGNED this 23rd day of December, 2019.

                                                ANDREW W. AUSTIN
                                              UNITED STATES MAGISTRATE JUDGE