IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JONATHAN LANGLEY § | |
| § | |
| VS. § | NO. A-18-CV-443-DAE |
| § | |
| INTERNATIONAL BUSINESS § | |
| MACHINES CORPORATION § | |

### ORDER

Before the Court are IBM's Motion to Exclude Expert Report and Testimony of Rhoma Young (Dkt. No. 89); Plaintiff's Response (Dkt. No. 110); IBM's Reply (Dkt. No. 144); and Plaintiff's Sur-Reply (Dkt. No. 182). The District Court referred the discovery dispute to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

### I. BACKGROUND

The Plaintiff, Jonathan Langley has designated Rhoma Young to testify as a expert witness in this case regarding whether in this case "IBM deviated from accepted industry standards and practices in terms of human resources generally, and layoffs specifically." Dkt. No. 110 at 3. Young has owned and operated an HR consulting firm for the past 36 years. She has designed, implemented, or consulted on over 200 layoff actions, including for Fortune 500 entities. Her total experience in the field of HR dates back to 1978 and includes a stint working for General Motors Corporation, where she managed the labor relations for a plant with 5,000 employees during a period of major layoffs. She holds a masters degree in administration and management from Pepperdine University, and she has formally studied business management, supervision, employment, labor-management negotiations, employment/labor law, and HR policies and practices at various other institutions,

including the University of Chicago and Cornell. Dkt. No. 110 at 3-4. Though IBM does not challenge Young's qualifications to testify as an expert in this area, IBM argues her testimony should be excluded because it is unreliable, is based on insufficient or misleading representations, and is "rife with speculation." Dkt. No. 89 at 2.

## II. STANDARD

The Supreme Court acknowledged in *Daubert v. Merrell Dow Pharmaceuticals* that Federal Rule of Evidence 702 is the proper standard for determining the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597-98 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under *Daubert*, a trial court acts as a "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147. Experts need not be highly qualified to testify; differences in expertise go to the weight of the testimony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not

admit testimony that is based purely on the unsupported assertions of the expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

In addition to being qualified, an expert's methodology for developing the basis of her opinion must be reliable. *Daubert*, 509 U.S. at 592-93; *Moore*, 151 F.3d at 276. "The expert's assurances that he [or she] has utilized generally accepted scientific methodology is insufficient." *Moore*, 151 F.3d at 276. Even if the expert is qualified and the basis of his or her opinion is reliable, the underlying methodology must have also been correctly applied to the case's particular facts in order for the expert's testimony to be relevant. *Daubert*, 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). The burden is on the proponent of the expert to establish its admissibility by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10; *Johnson v. Arkema, Inc.*, 685 F.3d 452 (5th Cir. 2012). The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276. The Court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III. ANALYSIS

IBM challenges Young's testimony on three grounds: (1) the portions of her report in which she opines that Langley's termination was part of a pattern is inadmissible and therefore irrelevant, and even if it is admissible, it is not based on accurate facts; (2) her opinions regarding whether IBM

3

should have provided Langley with the notices required by the OWBPA is legally incorrect; and (3) her testimony regarding whether IBM complied with its own policies will not aid the jury. In its reply, IBM expands its argument and alleges that statements in Young's declaration (attached to Langley's response) are new opinions, and they should be disallowed as untimely.

**A.    Pattern Testimony**

IBM complains that "it is settled law in the Fifth Circuit that a plaintiff asserting an individual claim of discrimination may not rely on evidence of a 'pattern or practice' of discrimination," and thus Young's testimony regarding a pattern of age discrimination at IBM is inadmissible. Dkt. No. 89 at 2-3. Langley disagrees, and argues that the Fifth Circuit allows the use of such testimony as evidence that an employer's stated reason for a challenged action was in fact a pretext for discrimination. Dkt. Nos. 110 at 8-10; 182. The Court need not resolve this debate to rule on this portion of IBM's challenge to Young's testimony, however. The question of whether there was a pattern or practice at IBM of laying off older workers is a fact question, and Langley fails to demonstrate that Young's testimony is needed or would be helpful for the jury to understand the underlying evidence. Young, though skilled and experienced in the human resources world, is no more capable than a jury is to identify the existence of a pattern or practice in IBM's hiring and firing. If Langley wishes to pursue this argument at trial, he can offer the "source" evidence and let the jury reach its own conclusion on whether it shows a pattern. IBM's motion on this issue has merit.

**B.    Testimony Regarding "Suggested Management Practices"**

Young's report criticized IBM for failing to follow "Suggested Management Practices" in the RIF involving Langley. IBM contends that she "conceded at her deposition that IBM's reduction-in-force guidelines do—by and large—comply with 'Suggested Management Practices,'"

4

and instead only identified one instance of such an alleged failure—not providing Langley (and the other laid off employees) with the demographic data called for by the OWBPA. Dkt. No. 89 at 8. IBM seeks to exclude this opinion, contending it is not based upon "reliable principles or methods." Its argument is that it had no legal obligation to provide this data to employees, because the OWBPA only requires it if the employer is asking laid off employees to release ADEA claims, and IBM did not seek such releases. Langley does not respond to this argument in his response, and instead argues that IBM deviated from standard RIF practices in many additional ways, based on issues Young raises in the Declaration submitted with Langley's response. Dkt. No. 110 at 10-14. As noted earlier, IBM argues that these opinions are untimely, and should not be permitted. The Court addresses that issue below. But to the extent that Young planned to testify that IBM's failure to provide workers with the demographic data called for by the OWBPA deviated from standard practices, Langley's failure to brief the issue waived it, and IBM's motion should be granted on this point.

## C. Testimony Regarding IBM's Compliance with Its Own Policies

IBM next moves to exclude Young's report and testimony regarding whether the process used to select Langley for termination followed IBM's own policies and procedures. Dkt. No. 89 at 9-10. IBM relies on *Grimes v. Wal-Mart Stores Tex., LLC*, 2012 WL 12883080 at *4 (W.D. Tex. Jan. 23, 2012), for the proposition that courts routinely exclude the testimony of human resources experts who seek to opine on the issue of whether an employer followed its own policy. In *Grimes*, the court excluded the expert witness's opinion, in part, because her "testimony would not aid the trier of fact because Defendant's employment/career policies, and the manner in which they are alleged to have deviated from them, are not so complex as to require expert explanation." *Id.* The

Court agrees. Whether IBM followed its own policies requires knowledge of two sets of facts: the applicable IBM policies, and the actions IBM actually took in the RIF. Determining whether IBM's actions aligned with its policies, or whether IBM ignored its own policies, is simply not a matter requiring expertise.

**D.     Other Objections**

Lastly, IBM argues that Young's opinions should be excluded because she opines on matters that fall within the purview of the trier of fact, specifically legal issues, and questions of witness credibility. These are not matters properly addressed in the context of a *Daubert* motion, but instead are the type of question raised in a routine motion in limine. And even if the Court chose to construe this portion of IBM's motion as a motion in limine, it would deny it as neither of these matters is something requiring an objection outside the presence of the jury, prior to the testimony or questioning. If Langley's counsel asks Young a question at trial that IBM believes calls for a legal conclusion, or asks her to opine on a witness's credibility, IBM can make that objection at trial.

**E.     Supplementation of Report with Declaration**

In its Reply, IBM complains that Young improperly supplemented her expert report through the Declaration filed with Langley's response. Dkt. No. 110-1. IBM complains that the Declaration contains entirely new opinions, and Young should not be permitted to opine on those matters as they were presented in an untimely manner. Dkt. No. 144 at 5-7. Though he filed a sur-reply, Langley does not respond to this argument in that pleading. The Court has written in some length on this same issue in its order on IBM's motion seeking to strike the testimony of Langley's statistical expert, Dr. Daniel Kuang, so it will not repeat the legal principles at play, and applied here. In brief, having made a comparison of Young's Declaration (Dkt. No. 110-1) and her initial report (Dkt. No.

89-3), the Court finds that though Young's Declaration is better organized and more clearly states that some of IBM's actions in its lay off deviated from industry standards, all of the matters in her Declaration were adequately disclosed in her report. There is therefore no basis on which the Court may preclude Young from testifying on the alleged "Suggested Management Practices" deviations listed in her Declaration.

## IV.  CONCLUSION

In summary, though the Court believes that Young should not be precluded from testifying at all, her testimony should be limited to offering opinions regarding whether IBM's actions related to the reduction in force involving Langley were consistent with standard practices in large lay off situations. She should not be permitted to testify regarding whether IBM's lay off of Langley was part of a pattern, or whether IBM followed its own policies during the subject lay off.

Accordingly, Defendant Motion to Exclude Expert Report and Testimony of Rhoma Young (Dkt. No. 89) is **DENIED IN PART** and **GRANTED IN PART** as set forth above.

SIGNED this 23rd day of December, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE