UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JONATHAN LANGLEY, § | No. 1:18–CV–443–DAE |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | |
| § | |
| INTERNATIONAL BUSINESS § | |
| MACHINES CORPORATION, § | |
| § | |
| Defendant. § | |
| _____ § | |

ORDER: (1) ADOPTING REPORT AND RECOMMENDATION, (2) DENYING MOTION FOR SUMMARY JUDGMENT; AND (3) DENYING MOTION FOR LEAVE TO PROVIDE NEWLY DISCOVERED EVIDENCE

Before the Court are: (1) a Report and Recommendation ("Recommendation") filed by U.S. Magistrate Judge Andrew W. Austin (Dkt. # 201); and (2) Plaintiff Jonathan Langley's ("Plaintiff" or "Langley") Opposed Motion for Leave to Provide Newly Discovered Summary Judgment Evidence (Dkt. # 211). On August 30, 2019, the Court[1] referred this case for all pretrial matters to Judge Austin. (Dkt. # 174.) On December 23, 2019, Judge Austin issued his Recommendation on Defendant International Business Machine Corporation's ("IBM") Motion for Summary Judgment (Dkt. # 126). (Dkt. # 201).

---

[1] This case was transferred from the docket of the Honorable Lee Yeakel to this Court on October 23, 2019. (Dkt. # 199.)

On January 10, 2020, IBM filed objections (Dkt. # 206), Langley filed a response on January 31, 2020 (Dkt. # 210), and IBM filed a reply on February 14, 2020. (Dkt. # 215).

After careful consideration, and for the reasons given below, the Court **ADOPTS** Judge Austin's Recommendation (Dkt. # 210), **DENIES** IBM's Motion for Summary Judgment (Dkt. # 126), and **DENIES** Langley's Motion for Leave to Provide Newly Discovered Evidence (Dkt. # 211).

## BACKGROUND

The Court states the facts in this case as recited by Judge Austin.[2] (See Dkt. # 201.)  This is an age discrimination case in which Langley sues his former employer IBM for age discrimination under the Age Discrimination in Employment Act ("ADEA") and the Texas Labor Code.  Langley was 59 years old when, in 2017, IBM terminated him after 24 years of employment.  At the time of his termination, Langley was employed in sales in IBM's Hybrid Cloud business unit.  Langley asserts he was laid off because of IBM's focus on hiring younger employees, while simultaneously laying off older workers in so-called "Resource Actions" (IBM lingo for a reduction-in-force).  He claims that in its Resource Actions, IBM applied subjective criteria to screen out older workers and did so in

---

[2] To the extent IBM objects to any of Judge Austin's recitation of the background facts, they are addressed below in the objections.

its selection of him as one of the employees to be laid off in the Resource Action that led to his termination.  IBM responds that its decision to terminate Langley was made as part of a reduction-in-force ("RIF"), and it used age-neutral criteria to identify him for inclusion in the RIF.

On July 16, 2019, IBM filed a motion for summary judgment on all of Langley's claims.  (Dkt. # 126.)  Judge Austin issued his Recommendation on IBM's motion on December 23, 2019.  (Dkt. # 201.)  Objections to the Recommendation were due within 14 days after being served with a copy.  After the parties were granted extensions to file objections and responses, on January 10, 2020, IBM timely filed objections to the Recommendation.  (Dkt. # 206.)  Langley filed a response in opposition to the objections on January 31, 2020.  (Dkt. # 210.)  On February 14, 2020, IBM filed a reply in support of its objections.  (Dkt. # 215.)

On January 31, 2020, Langley filed an Opposed Contingent Motion for Leave to Provide Newly Discovered Summary Judgment Evidence.  (Dkt. # 211.)  On February 7, 2020, IBM filed a response in opposition to this motion.  (Dkt. # 213.)  On February 14, 2020, Langley filed a reply in support of the motion.  (Dkt. # 214.)

## LEGAL STANDARD

### A.   Review of Report and Recommendation

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected. See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985). A district court need not consider "[f]rivolous, conclusive, or general objections." Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the Recommendation is clearly erroneous or contrary to law. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

B.  Summary Judgment

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Vann v. City of Southaven, 884 F.3d 307, 309 (5th Cir. 2018) (citations omitted); see also Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Bennett v. Hartford Ins. Co. of Midwest, 890 F.3d 597, 604 (5th Cir. 2018) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" Nola Spice Designs, LLC v. Haydel Enter., Inc., 783 F.3d 527, 536 (5th Cir. 2015) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'" Kim v. Hospira, Inc., 709 F. App'x 287, 288 (5th Cir. 2018) (quoting Nola Spice Designs, 783 F.3d at 536). While the movant must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. Austin v. Kroger Tex., L.P., 864 F.3d 326, 335 (5th Cir. 2017)

(quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)). A fact is material if it "might affect the outcome of the suit." Thomas v. Tregre, 913 F.3d 458, 462 (5th Cir. 2019) (citing Anderson, 477 U.S. at 248).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." Jones v. Anderson, 721 F. App'x 333, 335 (5th Cir. 2018) (quoting Duffie v. United States, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. Infante v. Law Office of Joseph Onwuteaka, P.C., 735 F. App'x 839, 843 (5th Cir. 2018) (quoting Willis v. Cleco Corp., 749 F.3d 314, 317 (5th Cir. 2014)). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" McCarty v. Hillstone Rest. Grp., Inc., 864 F.3d 354, 357 (5th Cir. 2017) (quoting Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005)). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. Wease v. Ocwen Loan Servicing, LLC, 915 F.3d 987, 992 (5th Cir. 2019).

Additionally, at the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form. See Fed. R. Civ. P. 56(c); Lee v. Offshore Logistical & Transp., LLC, 859 F.3d 353, 355 (5th Cir. 2017). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

## ANALYSIS

In his Recommendation, Judge Austin first found that Langley had made out a prima facie case of age discrimination because (1) Langley is over the age of 40 and thus in the class protected by the ADEA; (2) he was adversely affected when he was terminated by the challenged decision; (3) he was qualified to assume another position when he was terminated; and (4) there is evidence from which a factfinder could conclude that IBM intended to discriminate against older workers in making decisions regarding layoffs and internal transfers. (Dkt. # 201 at 10.)

Judge Austin next determined that IBM had proffered a legitimate, nondiscriminatory reason for its layoff decisions—Langley was chosen for termination because his group's leadership determined a reduction in force was necessary to reduce costs and improve financial performance. (Dkt. # 201 at 10.)

7

Specifically, IBM proffered that (1) it was phasing out "PureApp," the product Langley's team supported, and thus two of the four members of that team needed to be terminated; and (2) in deciding which employees of the team to terminate, Langley was chosen after IBM conducted a subjective evaluation. (Id. at 10–11.)

Judge Austin next found that there were genuine issues of material fact as to whether IBM's proffered reasons for Langley's termination were a pretext for retaliation. (Dkt. # 201 at 11–12.) Among others, Judge Austin determined that whether PureApp was indeed being phased out was a disputed fact. (Id. at 12.) Thus, Judge Austin found that there are fact issues as to whether IBM's purported economic reason for Langley's termination was a pretext for retaliation. Additionally, Judge Austin decided that there were issues of fact as to whether Langley was terminated based on his performance because, among other reasons, Langley was a strong performer, receiving the largest bonus in his group in the quarter before his layoff. (Id. at 13.)

IBM objects to Judge Austin's determination that factual issues exist in both the prima facie and pretextual analyses. (Dkt. # 128.) Each Objection is addressed below.

A.  Objections to Prima Facie Case

IBM objects to Judge Austin's findings that there is an issue of fact as to whether Langley has established a prima facie case of age discrimination. (Dkt. # 206 at 10.) Specifically, IBM objects that Judge Austin erred in: (1) finding a factual issue regarding whether any age-biased actor influenced Langley's termination; (2) concluding that HR's discriminatory actions relating to redeployment resulted in Langley's termination; and (3) concluding that issues of fact exist as to the decision-makers or the timing of Langley's termination decision. (Dkt. # 206 at 10–16.)

To establish a prima facie case of age discrimination using the reduction-in-force paradigm,[3] a plaintiff must demonstrate "(1) that he is within the protected age group; (2) that he has been adversely affected by the employer's decision; (3) that he was qualified to assume another position at the time of the discharge; and (4) evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." McMichael v. Transocean Offshore Deepwater Drilling, Inc., 934 F.3d 447, 456 n.4 (5th Cir. 2019) (quotation marks and citation omitted).

---

[3] Both parties use this analysis in their briefing and the Court agrees it is proper to use here.

Again, IBM does not dispute the first three elements. Instead, IBM contends that Langley has failed to establish the fourth prong—whether it treated Langley's age neutral in its RIF. (Dkt. # 206 at 10.) IBM argues that the Recommendation erroneously applied a "cat's paw" theory in concluding that IBM's HR team, through direction from high-ranking executives, were the de-facto decision-makers in Langley's termination. (Id. at 11.) IBM also maintains that a company's focus on entry-level hiring does not give rise to age discrimination. (Id. at 12.)

Additionally, IBM asserts that, contrary to Judge Austin's conclusions, there is no evidence that any supervisor wanted to hire Langley and had room for him after he was identified for RIF, but that IBM's HR prevented that supervisor from hiring him. (Id. at 14.) Instead, according to IBM, the evidence demonstrates that there were no available positions and there is no evidence that younger employees were hired or transferred into these positions. (Id.) IBM also objects to several documents Judge Austin used in support of his findings, noting that the record reflects that nine other employees selected for layoff in the same resource action as Langley successfully found other positions despite the fact that four employees were over 50 and two were over 60. (Dkt. # 206 at 15.)

IBM also objects on the basis that the Recommendation adopted Langley's speculation that anyone other than Overbay, Langley's immediate

10

supervisor, made the decision to terminate Langley, let alone anyone with an age bias. (Dkt. # 206 at 16.) IBM contends that the evidence used by Judge Austin in support of this conclusion was taken out of context. (Id. at 17.)

Despite IBM's objections to the Recommendation, the Court, after conducting a de novo review of the evidence and the record, finds there is a factual dispute regarding the fourth element of Langley's prima facie case. For instance, internal IBM corporate planning documents give rise to a factual dispute as to whether IBM executives sought to lay off older workers in an effort to hire a younger workforce. (See, e.g., Dkt. #151-7 at 11, 13, 17; Dkt. # 151-14 at 2; Dkt. # 151-27; Dkt. # 151-13; Dkt. # 151-11 at 7, 19; Dkt. # 126-12 at 3.) Given these internal guidance documents, while IBM disputes that its corporate executives had any role in Langley's termination, there is support in the record for applying a cat's paw theory of liability. See Roberson v. Alltel Info. Servs., 373 F.3d 647, 653 (5th Cir. 2004) ("If the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary co-workers, it is proper to impute their discriminatory attitudes to the formal decisionmaker." (quoting Russell v. McKinney Hosp. Venture, 235 F.3d 219, 225 (5th Cir. 2000)). To invoke the cat's paw analysis, Langley must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker "possessed leverage, or exerted influence, over the titular

decisionmaker." Id.; see also Laxton v. Gap Inc., 333 F.3d 572, 583 (5th Cir. 2003). In this case, the evidence creates a factual issue as to whether Overbay was in fact effectively told whom to lay off, as well as whether her and her supervisors' attempts to place Langley in different positions were overruled by HR and IBM executives. The abundant public and internal statements of IBM's CEO and CFO in promoting the company's need to "refresh" its workforce creates a factual issue as to whether Overbay's supervisors were following company directives when directing their own subordinates where to cut costs in the RIF.

Furthermore, there are genuine issues of material fact regarding whether IBM refused to relocate Langley to a different position or even to retain his employment. For instance, there is evidence which indicates that IBM had policies requiring its managers to "meet headcount" quotas which favored the hiring of younger workers, and that Overbay knew of Langley's selection for termination prior to the date given in her declaration. (See, e.g., Dkt. # 151-4 at 1–2; Dkt. # 154-4 at 4; Dkt. # 151-28.) Additionally, there is evidence which indicates that Langley applied for other positions within IBM, but that HR blocked his hiring or that IBM policy required an external hire or high-level executive approval was required. (See, e.g., Dkt. # 151-4 at 4–5, 8, 12–13, 16, 28.)

Given the above evidence, the Court finds genuine issues of material fact exist as to the fourth element of Langley's prima facie case of age discrimination, and the Court will thus overrule IBM's objections on this basis.

B.   Objections to Pretext

IBM also objects to Judge Austin's finding that there is an issue of fact as to pretext. (Dkt. # 206 at 18.) IBM argues that the Recommendation misstates IBM's articulated reason for reducing the number of PureApp sales leads. (Id.) IBM also contends that its 2019 decision to re-package PureApp as part of a Cloud Pak does not establish pretext. (Id. at 19.) Finally, IBM maintains that the Recommendation misstates the process and rationale for selecting Langley for termination. (Id. at 21.)

Under McDonnell Douglas, Langley must raise a genuine issue of material fact as to whether IBM's proffered reasons for his termination were not the true reasons but were merely pretext for discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). To establish pretext, the presented evidence must allow a reasonable jury to find that the proffered reason is "false or unworthy of credence," and that the true reason is discrimination. Vaughn v. Woodforest Bank, 665 F.3d 632, 637 (5th Cir. 2011); Laxton v. Gap Inc., 333 F.3d 572, 579 (5th Cir. 2003). "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a

suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." Reeves, 530 U.S. at 147; see also Laxton, 333 F.3d at 579. However, this disbelief must be supported by some evidence. The employee's subjective belief of discrimination is insufficient; the plaintiff must produce "substantial evidence of pretext." Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 402–03 (5th Cir. 2001). "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Reeves, 530 U.S. at 147. Thus, when coupled with the prima facie case, a reasonable jury may infer intentional discrimination based on falsities or inconsistencies in the employer's explanation. Id.

Given the above, the Court must determine whether IBM's proffered reason for Langley's termination—an economically-motivated RIF and the failure of the PureApp division—were not the true reasons but were pretext for age discrimination. Upon conducting a de novo review of the record in this case, the Court finds there are genuine issues of material fact regarding whether IBM's stated reasons are pretext for discrimination. Among others, Langley has presented evidence which suggests that Overbay was not the true decision-maker in Langley's termination. Langley's evidence indicates that despite Overbay's declaration that she was not aware of the proposed layoff until February 2017,

Langley was told by Overbay's supervisor Andrew Brown at least two months before that date that he would lose his job in the near future as he did not "see a fit" for Langley.  (See Dkt. # 151-4 at 2.)  Additionally, one month prior to Overbay's proposed notification date, on January 19, 2017, Langley's name appeared on an HR planning document wherein he was designated for layoff.  (Dkt. # 151-25.)  This evidence suggests that later that month Langley had already been counted as a reduction prior to Overbay's stated February 2017 date and that she was not the true decision-maker for Langley's termination.

Langley has also produced evidence which indicates that while Overbay was generally satisfied with Langley's work, including giving him higher ratings in his review and awarding him the largest bonus in his unit, Overbay's attempts at getting Langley transferred to a different department were blocked by IBM's HR department.  (See Dkt. # 151-25 at 2; Dkt. # 151-32; Dkt. # 151-3; Dkt. # 151-4 at 4, 12, 28.)  Overbay herself recognized that HR's process in prohibiting Langley's transfer to a different department was difficult and that "we are not making this easy" and that the "process seems to change and become more difficult." (Dkt. # 151-4 at 4, 16.)

Furthermore, there is disputed evidence on the issue of whether PureApp is now packaged as Cloud Pak.  For instance, IBM contends that PureApp sales have continued on a limited basis and only to preexisting customers, and that

the company curtailed investments in the product and no longer employs any dedicated PureApp sellers on account of low sales. However, Langley has presented some evidence which suggests that Cloud Pak products are sold that are identical to PureApp products. (Compare Dkt. # 151-33 at 3, with Dkt. # 151-30.)

Given this evidence of record, the Court finds that Langley has met his burden of raising a genuine issue of material fact as to whether IBM's proffered reasons for his termination were not true but were merely pretext for age discrimination. Accordingly, the Court will overrule IBM's objections. Additionally, given that Langley has demonstrated a prima facie case of age discrimination and made a sufficient showing of pretext, the Court will deny IBM's motion for summary judgment (Dkt. # 126). For this reason, the Court will deny Langley's contingent motion for leave to provide newly discovered summary judgment evidence (Dkt. # 211).

CONCLUSION

Having reviewed the Magistrate Judge's findings and conclusions and finding no errors, the Court will accept and adopt the Report and Recommendation for the reasons stated therein. Thus, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. # 201) as the opinion of this Court, **DENIES** IBM'S Motion for Summary Judgment (Dkt. # 126), and **DENIES** Langley's

Case 1:18-cv-00443-DAE   Document 216   Filed 02/28/20   Page 17 of 17

Contingent Motion for Leave to Provide Newly Discovered Summary Judgment Evidence (Dkts. # 211). Trial in this case will be set by separate order.

**IT IS SO ORDERED**.

DATED: Austin, Texas, February 28, 2020.

_____
David Alan Ezra
Senior United States District Judge